998 F.Supp. 1070 (1998)
Gloria PARKER, Plaintiff,
v.
Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.
No. 4:96CV01059LOD.
United States District Court, E.D. Missouri, Eastern Division.
January 16, 1998.
*1071 Joseph S. Rubin, Joseph S. Rubin, P.C., Clayton, MO, for Gloria Parker, plaintiff.
Henry J. Fredericks, Asst. U.S. Attorney, St. Louis, MO, for Social Security Administration, Shirley S. Chater, defendant.

ORDER AND MEMORANDUM OF UNITED STATES MAGISTRATE JUDGE
DAVIS, United States Magistrate Judge.
This matter is before the Court on the cross-motions of the parties for summary judgment pursuant to Rule 56, Fed.R.Civ.P. This case is before the undersigned Magistrate Judge by consent of the parties pursuant to 28 U.S.C. § 636(c).
Plaintiff filed an application under the Social Security Act (the Act) for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq. (Tr. 54-57) Plaintiff alleged disability due to bilateral carpal tunnel syndrome, bilateral thoracic outlet syndrome, post-cervical discectomy and fusion, and hypertension. (Tr. 43, 68, 74) Plaintiff's application was denied initially and on reconsideration. (Tr. 24-27, 39-43)
On November 23, 1994, a hearing was held before an Administrative Law Judge (ALJ). (Tr. 282-295) On March 25, 1995, the ALJ issued a decision finding that plaintiff was *1072 not under a "disability" as defined by the Act. (Tr. 9-18) On March 28, 1996, the Appeals Council of the Social Security Administration denied plaintiff's request for review. (Tr. 2, 3) Thus, the decision of the ALJ is the Commissioner's final decision and is reviewable in this proceeding. 42 U.S.C. § 405(g).

MEDICAL EVIDENCE
The medical evidence shows that on July 20, 1992 plaintiff was seen by Dr. Vic Glogovac, who diagnosed her as suffering from carpal tunnel syndrome on the right. (Tr. 228) On October 16, 1992, plaintiff underwent a right carpal tunnel syndrome release procedure at the DePaul Health Center by Dr. Glogovac. (Tr. 95, 97) On January 5, 1993, plaintiff was again seen at the DePaul Health Center concerning her carpal tunnel syndrome. (Tr. 91) An electromyography (EMG) and nerve conduction study (NCS) was performed on plaintiff. (Tr. 92-93) The EMG was normal for both arms and the NCS showed mild electrical evidence of polyneuropathy. (Tr. 93)
On January 26, 1993, plaintiff was seen by Dr. Henry Lattinville. (Tr. 198) Plaintiff reported that since June of 1992 she has had pain in her hands, forearms, and neck. (Tr. 198) She tried wearing splints, but that did not help. (Tr. 198) Plaintiff also has recurrent symptoms of a gastric ulcer. (Tr. 198)
An examination of plaintiff revealed minimal restriction of neck motion. (Tr. 197) Deep tendon reflex was brisk, and tapping over the median nerves in her wrist did not result in her experiencing any tingling sensation in her hands. (Tr. 197) There was some bulging of the soft tissues on the dorsum of both forearms above the wrist. (Tr. 197) There was no redness, inflammation, or tenderness. (Tr. 197)
On February 3, 1993, Dr. Lattinville reviewed X rays and a MRI of plaintiff's cervical vertebrae. (Tr. 197) The X rays revealed about a 50% narrowing at the C5-6 level and very slight spurs out into the intervertebral foramen. (Tr. 197) The MRI showed a probable ruptured disc at the C5-6 level. (Tr. 197) He recommended an anterior cervical fusion. (Tr. 197)
On February 24, 1993, plaintiff underwent an anterior cervical fusion. (Tr. 100, 103-04) A follow-up visit on March 17, 1993 revealed that plaintiff was still aching in the arms, elbows, and forearms. (Tr. 196) A left carpal tunnel release was performed on plaintiff on March 22, 1993. (Tr. 189)
Dr. Lattinville saw plaintiff again on April 7, 1993. (Tr. 196) Plaintiff had swelling in her wrists, and when she started driving that week the swelling increased in her right wrist. (Tr. 196) On June 23, 1993, plaintiff complained of pain on both sides of her neck. (Tr. 195) X rays showed excellent fusion at C5-6, and the disc spaces were normal. (Tr. 195) There was a slight restriction of her neck motion, and rotating her neck resulted in some discomfort, but no severe pain. (Tr. 195)
On May 19, 1993, plaintiff reported to Dr. Glogovac increased discomfort in her hands. (Tr. 215) On July 2, 1993, plaintiff was told to try to get back to work and was given permission to work three days a week, as tolerated. (Tr. 212) On August 26, 1993, plaintiff reported that her employer insisted on her working on a full-time basis and, thus, there was no possibility of her returning to part-time work with her previous employer at that time. (Tr. 210)
On October 15, 1993, Dr. Glogovac found that plaintiff was significantly restricted with the use of her right upper extremity secondary to pain. (Tr. 209) Even lifting small objects could cause pain, and repetitive use caused significant distress. (Tr. 209) He found that plaintiff had at least a 50% impairment of the entire right upper extremity and a 10% impairment of the left hand and wrist. (Tr. 209) She was unable to work or drive due to her upper right extremity problems. (Tr. 209)
On November 19, 1993, Dr. Glogovac wrote that over the past month plaintiff's discomfort had significantly increased involving both upper extremities from the wrist area to the shoulder. (Tr. 208) He recommended that she try a pain clinic. (Tr. 208)
On December 6, 1993, plaintiff was seen by Samuel Bernstein, Ph.D., a licensed psychologist and vocational expert. (Tr. 200) Plaintiff *1073 reported not sleeping well, and that she was having trouble dressing and combing and washing her hair. (Tr. 201) It took two hands for her to pick up a small pot, and if she cooked, she was in severe pain. (Tr. 201) She was able to wash the dishes, do a little dusting, and do only one load of laundry a day. (Tr. 201) Any activity resulted in pain. (Tr. 202)
Plaintiff wears wrist splints four or five times a week about four hours a day and all night. (Tr. 203) The splints keep her wrists inactive and she needs to use them whenever she tries to work around the house. (Tr. 203) If she does not bend her wrists forward or backward she able to lift ten pounds, but not on a repetitive basis. (Tr. 203) She cannot type, can write about six checks before the pain is incapacitating, and she must rest her hands in her pockets or purse when she walks. (Tr. 203) Reaching overhead is next to impossible. (Tr. 203)
Mr. Bernstein found plaintiff to have significant limitations of her upper extremities due to pain. (Tr. 205) Considering the limited use of her upper extremities, along with her age, education, and work history, he concluded that plaintiff was unemployable. (Tr. 205)
On December 30, 1994, plaintiff saw Dr. Lattinville and reported numbness and tingling in her right hand. (Tr. 194) She still gets pain in her neck and right shoulder and sometimes in her left arm. (Tr. 194) He suspected that plaintiff had thoracic outlet syndrome. (Tr. 193-94) On January 3, 1994, a MRI of plaintiff's cervical spine revealed anterior fusion of C5-6, with moderate kyphosis. (Tr. 107) There was no chord compression or foraminal stenosis, no evidence of a herniated disc, and she had a grossly normal cervical spinal chord. (Tr. 107)
On May 12, 1994, plaintiff went to Christian Hospital for physical therapy. (Tr. 258-59) Plaintiff could only lie down on one side, experiences pain when she leans back in a chair or lies supine, and does not work due to pain. (Tr. 258) On May 23, 1994, plaintiff's physical therapist noted that she felt more relaxed and looser, although sleeping was still a problem. (Tr. 260) She could also now drive with minimal discomfort, and sitting was tolerable. (Tr. 260) Plaintiff's pain had decreased, and her posture had improved. (Tr. 261) Plaintiff still had frequent numbness and tingling. (Tr. 261)
On June 6, 1994, plaintiff's physical therapist noted that she was making excellent progress with her cervical range of motion and her pain. (Tr. 263) On June 8, 1994, plaintiff was examined by Dr. Susy Alias. (Tr. 113) Plaintiff complained of neck pain, pain in the hands and the upper extremities bilaterally, and swelling in the right neck and shoulder area. (Tr. 113) Normal range of motion in plaintiff's neck was noted. (Tr. 114) She had normal strength and range of motion in her shoulders bilaterally. (Tr. 114) No sensory or motor weakness was noted in either upper extremity, which were of normal strength. (Tr. 114)
Swelling was noted in the right supraclavicular area anteriorly compared to the left side, and she had muscle spasm in the neck laterally in the paraspinal area. (Tr. 114) There were no abnormalities in the lower extremities, which were also of normal strength. (Tr. 114) Dr. Alias diagnosed plaintiff as having a history of thoracic outlet compression syndrome right and a history of carpal tunnel syndrome bilaterally. (Tr. 114) He also found that plaintiff was unable to do her past job and that her functional ability to do her previous job was impaired because of pain in both upper extremities. (Tr. 114) She would be restricted in using small tools, and she has difficulty writing and typing. (Tr. 114) Dr. Alias recommended vocational training and rehabilitation. (Tr. 114)

HEARING TESTIMONY
Plaintiff stated that she was 46 years old and had completed high school. (Tr. 283) She worked as a legal secretary until July of 1992, and she has not tried to work since then. (Tr. 284) Plaintiff had surgery on both wrists, but she no longer receives treatment on them because there is nothing else that can be done. (Tr. 284)
Plaintiff also has thoracic outlet syndrome which showed no improvement after three months of therapy. (Tr. 285) Plaintiff takes pain pills and muscle relaxers, and also has a *1074 harness to wear that relieves the pressure on her neck. (Tr. 286) Plaintiff also has hypertension which is controlled by medication. (Tr. 287)
Plaintiff drives to the grocery store three or four times a week and can only do one load of laundry a day. (Tr. 287) She does not cook very often. (Tr. 288) She takes her showers at night because it is too much work for her arms to take a shower, wash, and dry and curl hair the same morning. (Tr. 288) Plaintiff no longer crochets, but she does read and watch movies. (Tr. 289)
Plaintiff does not belong to any church or any organizations. (Tr. 289) She has a stationary bike that she rides for exercise. (Tr. 289) Plaintiff has pain in her hands most of the time, especially in the morning. (Tr. 290) Plaintiff can write a grocery list, vacuum one room, and dust. (Tr. 290) She is limited in reaching over her shoulders because she gets a pinching, burning feeling in the back of her neck and shoulders. (Tr. 290) Plaintiff cannot hold up her granddaughters, who weigh about 16 pounds. (Tr. 291)

ALJ FINDINGS
The ALJ found that plaintiff met the disability insured status requirements of the Act on July 20, 1992, and continued to meet them through December 31, 1997. (Tr. 17) Plaintiff has not engaged in substantial gainful activity since 1992. (Tr. 17) The ALJ determined that the medical evidence establishes that plaintiff has thoracic outlet syndrome, cervical fusion, a history of bilateral carpal tunnel surgery, and controlled hypertension, but that she does not have an impairment or combination of impairments listed in, or equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 17)
The ALJ also found plaintiff's allegations regarding her functional limitations to not be credible. (Tr. 17) The ALJ determined that plaintiff has the residual functional capacity to perform the physical exertions and nonexertional requirements of work, except for lifting more than 10 pounds. (Tr. 17)
Furthermore, although plaintiff was unable to perform her past relevant work, she has the residual functional capacity for the full range of sedentary work. (Tr. 17) The ALJ concluded that plaintiff was not under a disability as defined by the Act at any time through the date of the decision. (Tr. 18)

DISCUSSION
Plaintiff claims that the Commissioner improperly evaluated her subjective complaints. Plaintiff further claims that the Commissioner unfairly discounted the findings of Samuel Bernstein. Finally, plaintiff claims that the Commissioner made inconsistent findings concerning plaintiff's ability to perform the full range of sedentary work.
Based on a review of the entire record as a whole, this Court finds no error in the ALJ's determination that plaintiff is not disabled. Therefore, the ALJ's decision is affirmed.
The Commissioner's decision as to a claimant's disability status is conclusive upon this Court if it is supported by "substantial evidence," i.e., relevant evidence which a reasonable person might accept as adequate to support the decision. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review and consider the record as a whole. Stewart v. Secretary of H.H.S., 957 F.2d 581, 585 (8th Cir.1992).
Plaintiff first claims that the Commissioner failed to evaluate plaintiff's subjective complaints properly. Plaintiff claims that her daily activities are not inconsistent with her claim of disability. Plaintiff also argues that the ALJ failed to consider any precipitating and aggravating factors and improperly discounted plaintiff's subjective evidence related to duration, frequency, and intensity of pain. Finally, plaintiff argues that the ALJ failed to mention the dosage, effectiveness, or side effects of her medication, nor any functional restrictions other than her inability to perform overhead lifting.
The ALJ applied Polaski v. Heckler, 751 F.2d 943 (8th Cir.1984) (subsequent history omitted) in analyzing plaintiff's subjective complaints of pain. The ALJ evaluated the medical evidence and plaintiff's subjective complaints, first pointing out that plaintiff *1075 was not in any distress when she testified, and that despite her hand impairment, she was able to drive. (Tr. 16) Furthermore, range of motion and grip strength in her wrist and shoulders was normal. (Tr. 16)
The ALJ also noted that further surgery was recommended, but plaintiff failed to follow this advice, and she "is undergoing no further medical treatment."[2] (Tr. 16) Plaintiff was able to feed her grandkids bottles and change their diapers. (Tr. 16) Plaintiff grocery shops three to four times a week, cooks, and does the laundry once a day. (Tr. 16) The ALJ stated that plaintiff spends her day reading and watching television. (Tr. 16) The ALJ found that such activities require concentration and cast doubt on plaintiff's allegations concerning her pain. (Tr. 16)
The ALJ also stated that plaintiff is no longer seeking treatment and that a pain clinic and vocational rehabilitation were recommended, but she failed to pursue these avenues. (Tr. 16) The ALJ found this noncompliance to undercut her allegations of severe pain. (Tr. 16) The ALJ noted that none of plaintiff's treating physicians indicated that she was disabled. (Tr. 16) Finally, the ALJ noted plaintiff's functional restriction of being unable to perform work that involves overhead lifting. (Tr. 16)
In disability determinations, credibility assessments are in the first instance for the ALJ and not the courts. Tucker v. Heckler, 776 F.2d 793, 796 (8th Cir.1985). The ALJ may reject a claimant's subjective testimony of pain on the basis of credibility due to inconsistencies in the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir.1990) The ALJ, however, must make express credibility determinations and set forth any inconsistencies in the record that lead him to reject plaintiff's complaints, and those credibility determinations must be supported by substantial evidence. Jernigan v. Sullivan, 948 F.2d 1070, 1073 (8th Cir.1991).
In assessing a claimant's subjective allegations, the ALJ must consider:
1. the subjective evidence of the duration, frequency, and intensity of plaintiff's pain;
2. any precipitating or aggravating factors;
3. the claimant's daily activities;
4. the dosage, effectiveness and side effects of any medication; and
5. the claimant's functional restrictions.
Baker v. Secretary of H.H.S., 955 F.2d 552, 555 (8th Cir.1992).
In the case at bar, the ALJ correctly examined the subjective evidence of plaintiff's pain, any precipitating or aggravating factors, her daily activities, and her functional restrictions. The ALJ then relied on several inconsistencies in plaintiff's testimony concerning her subjective complaints and the medical evidence to discredit plaintiff's subjective complaints. These included her ability to write and concentrate, her rather extensive daily activities including work around the house, and the lack of any medical evidence of disability.
Furthermore, plaintiff's failure to undergo a recommended treatment is a proper factor for the ALJ to rely on in discrediting plaintiff's subjective complaints, Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir.1989), and to deny her application for benefits. Roth v. Shalala, 45 F.3d 279, 284 (8th Cir.1995). The ALJ also properly relied on plaintiff's failure to seek further medical treatment as inconsistent with a claim of disabling pain. McClees v. Shalala, 2 F.3d 301, 303 (8th Cir.1993). The ALJ cannot be faulted for making findings that accurately reflect the evidence in the record before him.
Plaintiff's claim that her daily activities are not inconsistent with her claim of disability is merely a disagreement with the ALJ's analysis. There was nothing improper in the ALJ relying on plaintiff's daily activities as undercutting her claim of disability, as her daily activities were a relevant factor to consider. Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996).
*1076 Plaintiff next claims that the subjective evidence of the duration, frequency, and intensity of her pain is supported by the medical evidence. The ALJ found, and the evidence supports his finding, that plaintiff has a variety of medical problems. There is no medical evidence, however, that plaintiff's pain is disabling in nature. Moreover, as detailed above, the ALJ discredited plaintiff's subjective complaints due to inconsistencies in the record as a whole.
Plaintiff also argues that the ALJ failed to consider any precipitating and aggravating factors and that when all of the cumulative effect of her conditions are taken together, they constitute an aggravating factor of disability. Plaintiff does not identify a specific precipitating or aggravating factor that the ALJ failed to address.
Furthermore, a review of the record shows that the ALJ assessed and considered the objective evidence and listed his reasons for rejecting plaintiff's subjective complaints. He specifically addressed her daily activities and her complaints of disabling pain. After detailing the medical evidence, the ALJ found that the medical evidence established that plaintiff has residuals of a back injury and back surgeries, but that she does not have an impairment or combination of impairments which render her disabled under the applicable regulations. (Tr. 17)
Thus, the ALJ considered each of plaintiff's impairments in detail before he expressly concluded that plaintiff does not have an impairment or combination of impairment that rendered her disabled. "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir.1992), quoting, Gooch v. Sec. of H.H.S., 833 F.2d 589, 592 (6th Cir.1987), cert. denied, 484 U.S. 1075, 108 S.Ct. 1050, 98 L.Ed.2d 1012 (1988).
Plaintiff next argues that the ALJ failed to discuss the dosage, effectiveness, or side effects of her medications. Plaintiff claims that she is on medications that cause her grogginess and disorientation, which diminishes her ability to work. Plaintiff offered no such testimony at her hearing, and there is nothing in the medical evidence showing that she ever complained of such effects from her medications to her physicians. While it may have been preferable for the ALJ to briefly state the lack of effect of her medications, this Court will not fault the ALJ for not discussing evidence that was never presented to him.
The Court also notes that this was just one of many factors for the ALJ to analyze in discounting the severity of plaintiff's subjective complaints. The other factors cited to by the ALJ, such as the medical evidence, plaintiff's daily activities, and the hearing testimony, are supported by the record and are inconsistent with her complaints as to the severity of her disabling pain.
Plaintiff also claims that the ALJ failed to discuss any functional restrictions, other than her inability to perform overhead lifting. Plaintiff notes that she cannot use her hands for any dexterous purpose, lifting, or strength-required work, and she cannot lift over her head. The ALJ discussed and credited plaintiff's inability to perform work that involves over-head lifting. The other restrictions plaintiff mentions were simply not credited by the ALJ due to the inconsistencies in the record.
Plaintiff also argues that the medical evidence supports her claims of disabling pain. However, none of the medical evidence supports plaintiff's claim of disabling pain. The source for that allegation is plaintiff, and the ALJ properly discounted it due to the inconsistencies in the record.[3]
Plaintiff next claims that the ALJ failed to address "the plain and well-known fact" that plaintiff's conditions are pain-producing conditions even after surgery. The question, however, is not whether plaintiff is suffering from pain, rather, the issue is whether her pain is disabling. The ALJ discussed in great detail plaintiff's subjective complaints *1077 of pain, and there is substantial evidence in the record as a whole to find that her pain was not disabling.
Plaintiff next argues that the ALJ unfairly discounted Samuel Bernstein's findings. In his opinion, the ALJ noted first that Mr. Bernstein was hired by plaintiff's attorney, and saw plaintiff only on one occasion. (Tr. 16) The ALJ also found that Mr. Bernstein's assessment was not supported by the medical evidence. (Tr. 16)
As noted earlier, credibility assessments are in the first instance for the ALJ and not the courts. Tucker, supra. Furthermore, the ALJ properly relied in part on the fact that none of her doctors stated that plaintiff was disabled to discredit the opinion of Mr. Bernstein. See Cruse v. Bowen, 867 F.2d 1183, 1187 (8th Cir.1989) The ALJ also could properly rely on the fact that Mr. Bernstein's opinion was based on a one-time evaluation as a basis for discrediting that opinion. Browning v. Sullivan, 958 F.2d 817, 823 (8th Cir.1992)
Plaintiff next claims that the Commissioner made inconsistent findings concerning plaintiff's ability to perform the full range of sedentary work. Plaintiff argues that the ALJ found that plaintiff was unable to do her past relevant work as a legal secretary, but that she has the residual functional capacity to do the full range of sedentary work. Plaintiff argues that her past work as a legal secretary was sedentary work and, thus, the ALJ's findings are inherently inconsistent.
Plaintiff indicated in her vocational reports that her past jobs as a legal secretary, waitress, or hostess required her to lift weights of 20 pounds. (Tr. 62, 65) The ALJ found that plaintiff was unable to perform her past relevant work as a legal secretary, waitress, or hostess because of the amount of lifting involved in those occupations. (Tr. 17) He also found that plaintiff could perform the full range of sedentary work. (Tr. 17)
Sedentary work is defined in 20 C.F.R. § 404.1567(a) as involving lifting not more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Thus, since plaintiff's past relevant work required her to lift 20 pounds, that work does not fit the definition of sedentary. Therefore, notwithstanding plaintiff's conclusory and unsupported allegation to the contrary, there is nothing inconsistent in the ALJ finding that plaintiff could not perform her past relevant work, but that she could perform the full range of sedentary work.
Plaintiff has also filed a motion to reopen the record to include some new medical records concerning her treatment after the ALJ's decision. Plaintiff claims these records are material and that good cause exists, namely, the fact that the records were not in existence at the time of the ALJ's decision, to reopen the record.
The records in question cover medical visits by plaintiff from August 1996 to January 1997. The ALJ's decision was dated March 25, 1995. Under 42 U.S.C. § 405(g), courts may order the Commissioner to consider additional evidence upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in the prior proceeding.
The fact that medical records did not exist at the time of the administrative hearing may constitute good cause. Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir.1991). However, if the medical reports are not closely enough related in time to either the ALJ's decision or the Appeals Council's review, than remanding the case for further consideration is not warranted. Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir.1993); Goad v. Shalala, 7 F.3d 1397, 1398 (8th Cir. 1993); Thomas, supra. Furthermore, if such medical records do not relate to a claimant's condition as it existed when the ALJ made his decision, they are not material. Thomas, supra; Goad, supra.
None of the medical records plaintiff wishes to submit specifically relate to plaintiff's condition at the time of the ALJ's decision. Additionally, the most recent of these records relates to plaintiff's condition 17 months after the ALJ's decision. The motion to reopen is denied. Thomas, supra.
*1078 THEREFORE, IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted.
IT IS HEREBY FURTHER ORDERED that plaintiff's motion for summary judgment is denied.
IT IS HEREBY FURTHER ORDERED that plaintiff's motion to reopen the record is denied.
NOTES
[1] President Clinton appointed Kenneth J. Apfel to serve as Commissioner of Social Security, effective September 29, 1997, to succeed John J. Callahan. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth J. Apfel should be substituted for John J. Callahan as the defendant in this suit. No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] The ALJ's decision actually states she "is undergoing to further treatment." In the context of the decision, however, it is clear that this is a typographical error.
[3] Plaintiff argues in connection with this claim that the ALJ failed to consider Dr. Glogovac's February 3, 1993 medical report on plaintiff. That report is specifically referenced in the ALJ's decision. (Tr. 13) Moreover, that report was prepared prior to plaintiff's cervical fusion and her left carpal tunnel release.