**Joseph JERNIGAN, Appellant,**

v.

**Louis SULLIVAN, Secretary of Health and Human Services, Appellee.**

**No. 90–3053.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1991.

Decided Nov. 4, 1991.

---

Frank Niesen, Jr., St. Louis, Mo., for appellant.

Michael R. Frye, Dept. of Health and Human Services, Kansas City, Mo. (Henry Fredericks, Asst. U.S. Atty., St. Louis, Mo., on brief), for appellee.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Claimant Joseph Jernigan appeals the district court's [1] order affirming the denial of his application for disability insurance benefits. We affirm.

## I. BACKGROUND

Jernigan was born in December 1959 and has a ninth grade education. He worked as a punch press operator from May 1978 until January 1981, and also worked briefly as a telephone solicitor in 1983. On February 15, 1979, Jernigan suffered an industrial injury that resulted in the amputation of his right forearm.

On April 16, 1984, Jernigan filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.[2] R. at 99–102. The application was denied initially and on reconsideration. At Jerni-

---

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

2. Jernigan first filed an application for disability and disability insurance on August 31, 1982. He alleged a disability as of January, 1981, stemming from a right arm amputation. The Secretary denied the application and Jernigan did not pursue the claim further.

gan's request, an administrative hearing was held on July 9, 1985. The Administrative Law Judge ("ALJ") denied benefits under Title II, but found that Jernigan was disabled under Title XVI of the Act.[3] R. at 40–46. The Appeals Council vacated the ALJ's decision and remanded the case for completion of a Psychiatric Review Technique Form. The ALJ denied benefits on April 30, 1987. R. at 10–16. Jernigan filed suit in district court and the case was remanded with instructions to reevaluate Jernigan's subjective complaints of pain. After holding a supplemental hearing on July 20, 1988, the ALJ again determined that Jernigan was not eligible for benefits under Title II. The Appeals Council adopted the ALJ's decision. The district court approved the magistrate's recommendation that the Secretary's motion for summary judgment be granted.

Jernigan testified that he began experiencing depression soon after the amputation of his forearm, has had pain in his right stump, neck and eyes since the operation, and has had an alcohol dependency problem that resulted in three alcohol-related arrests. R. at 221–224. Jernigan also indicated that he could lift five pounds, sit for one-half hour, walk one block, and stand for two hours before becoming tired. R. at 80–81. Finally, he stated that he occasionally assisted with housework, visited relatives and friends, and watched television. R. at 229–231.

In addition to listening to Jernigan's testimony, the ALJ reviewed numerous medical reports and hospital records. Jernigan was first hospitalized on February 15, 1979, following the accidental amputation of his right arm. He was treated over the next few months by Dr. Phillip George, an orthopedic surgeon. George noted that the amputated arm healed properly and Jernigan had acquired good control of his prosthesis. R. at 156, 160. Jernigan was released from the hospital and returned to work on January 14, 1980. He continued

working until he was laid off in January 1981. R. at 158.

Dr. James Klieforth, a surgeon who examined Jernigan on September 30, 1982, noted a well-healed stump on the right arm. R. at 170. In June, 1983, Jernigan was treated at an emergency room for a fractured left hand resulting from a recent football injury. R. at 181–82. On August 7, 1983, Jernigan was involved in a bar fight and was treated for a left hand fracture and hip pain. R. at 177–78. Jernigan was first treated at the emergency room for complaints of nervousness on August 11, 1983, was diagnosed as having an acute anxiety reaction, and was prescribed medication. R. at 176. In March of 1984, Jernigan complained of nervousness, depression and back pain. Although he was prescribed medication for his nervousness, the medical report indicated that Jernigan's arm was healing properly and he was using his prosthesis effectively. R. at 173.

At the Secretary's request, Dr. Farida Farzana performed a psychiatric evaluation on June 11, 1984. Farzana noted that Jernigan was not on medication and was not seeing a physician on a regular basis. Farzana concluded that Jernigan suffered from a generalized anxiety disorder and episodic alcohol abuse. R. at 188–91. On June 14, 1984, William Birge, D.O., examined Jernigan and diagnosed mild depression and anxiety. The doctor recommended psychological counseling and vocational rehabilitation. R. at 183–186. On October 20, 1984, Dr. Edwin Wolfgram, a psychiatrist, diagnosed Jernigan as suffering from periodic alcohol abuse and an inadequate personality. R. at 193–94. Finally, Dr. Jerome Holliday, a psychologist who tested Jernigan on November 5, 1984, concluded that Jernigan had neurotic depression stemming from his 1979 injury. R. at 196–98.

After hearing the evidence, the ALJ determined that Jernigan was not suffering a

---

**3.** To be eligible for supplemental security income benefits under Title XVI of the Act, a claimant must show he was under a continuing disability while his application was pending. *See* 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330, 416.335. The ALJ found that Jernigan developed a severe anxiety reaction with neurotic depression in August of 1983 that rendered him disabled at the time his application was filed on April 16, 1984.

disability as defined under Title II of the Act at any time he met the earnings requirement.[4] R. at 213. The ALJ noted that although Jernigan suffered a traumatic amputation of the forearm before December 31, 1982, the impairment did not prevent Jernigan from performing his past work as a punch press operator. R. at 213. Furthermore, the ALJ determined that Jernigan's subjective complaints of pain were not credible. R. at 212–13.

## II. DISCUSSION

■ Jernigan argues that the ALJ's decision was not supported by substantial evidence on the record. Crucial to Jernigan's argument is the ALJ's alleged failure to properly review his subjective complaints of pain under the standards of *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir.1984). We must uphold the ALJ's decision if it is supported by substantial evidence on the record as a whole.[5] *McMillian v. Schweiker*, 697 F.2d 215, 220 (8th Cir.1983).

■ In reviewing the Secretary's decision, we must consider: "(1) whether, as required by *Polaski*, the Secretary considered all of the evidence relevant to the claimant's complaints of pain; and (2) whether the evidence contradicted the claimant's account, so that the Secretary could justifiably discount the [claimant's] testimony for lack of credibility." *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987). Moreover, it is the statutory duty of the Secretary, not this court, to assess the credibility of the claimant and other witnesses. *Tucker v. Heckler*, 776 F.2d 793, 796 (8th Cir.1985).

■ Under *Polaski*, the absence of an objective medical basis that supports the subjective complaints of pain is just one factor to be considered in evaluating the credibility of a claimant's subjective complaints of pain. *Polaski*, 751 F.2d at 948. The ALJ must also consider "the claimant's prior work record and observations by third parties and treating and examining physicians relating to ... (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions." *Id.* "Subjective complaints [of pain] may be discounted if there are inconsistencies in the record as a whole, but may not be discounted solely on the basis of the ALJ's personal observation." *Conley v. Brown*, 781 F.2d 143, 146 (8th Cir.1986). Furthermore, the ALJ must make "express credibility determinations and set forth the inconsistencies in the record that lead the ALJ to reject the claimant's complaints of pain." *Brock v. Secretary of HEW*, 791 F.2d 112, 114 (8th Cir.1986). These credibility determinations must be supported by substantial evidence. *See Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988).

■ We find the ALJ properly interpreted the record in finding that Jernigan was not entitled to disability benefits prior to December 31, 1982. The evidence indicated that Jernigan was able to adjust remarkably well to the loss of his arm; he was able to return to work and did not leave his job due to medical reasons. Jernigan performed light housework, watched television, and visited friends and relatives at least three times a week. The medical reports indicate that Jernigan was not confined to his home; he was treated for injuries stemming from playing football and being involved in a bar fight. Jernigan sought no medical treatment from January

---

**4.** Jernigan's insured status under Title II of the Act expired on December 31, 1982. *See* 42 U.S.C. §§ 416(i)(3)(B), 423(c)(1)(B); 20 C.F.R. § 404.130.

**5.** Substantial evidence is more than a scintilla of evidence. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edi-*

*son Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). Under this standard, we do not reverse the Secretary even if this court, sitting as finder of fact, would have reached a contrary result; "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150–51 (8th Cir.1984).

1980 through June 1983, and there were no reports indicating any problems with his prothesis after January 1980. Jernigan also testified that he did not feel pain associated with his amputated arm, only tightness and numbness around the stump, and he does not take medication for his pain or for any other reason. Furthermore, Jernigan did not complain of any side effects caused by the medication prescribed after the amputation. Finally, although Jernigan testified he can only walk one-half of a block and stand for two hours, no physician has placed restrictions on his physical activity. Clearly, inconsistencies existed between Jernigan's subjective complaints of pain and the remaining evidence in the record. Because there are inconsistencies in the evidence as a whole, we hold the ALJ permissibly found that Jernigan's complaints were not credible.

We also note that Jernigan's application for unemployment compensation benefits adversely affects his credibility. A claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work. *Perez v. Secretary of HEW*, 622 F.2d 1, 3 (1st Cir.1980). At the time Jernigan alleged his disability, he completed an application for unemployment compensation benefits. Because his application necessarily indicates that Jernigan was able to work, this may be some evidence, though not conclusive, to negate his claim that he was disabled prior to December 31, 1982.

## III. CONCLUSION

We conclude the Secretary's decision denying claimant's benefits is supported by substantial evidence in the record as a whole and accordingly we affirm that decision.