# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1940

_____

Joyce Davis,                                           *
                                                       *
      Plaintiff-Appellant,                        *    Appeal from the United States
                                                       *    District Court for the Eastern
    v.                                               *    District of Arkansas.
                                                       *
Kenneth S. Apfel, Commissioner of                      *
Social Security Administration,                        *
                                                       *
      Defendant-Appellee.                         *

_____

Submitted:  January 12, 2001
Filed:  February 13, 2001

_____

Before WOLLMAN, Chief Judge, HANSEN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

      Joyce Davis appeals from the summary judgment ordered by the district court[1] upholding the decision of the Commissioner of the Social Security Administration which denied her disability benefits. Davis contends that there was not substantial evidence to support the finding of the administrative law judge (ALJ) that she was not disabled, that the hypothetical question posed to the vocational expert did not include all of her relevant impairments and limitations, and that the ALJ's residual functional

_____

[1]The Honorable John F. Forster, Jr., United States Magistrate Judge for the Eastern District of Arkansas, presiding.

capacity determination was inconsistent with the evidence. We conclude that there was substantial evidence in the record to support the ALJ's decision and accordingly affirm the judgment of the district court.

## I.

Davis was born in 1946. She has a tenth grade education and over twenty years experience as a sewing machine operator. In 1992, Davis injured her back at work and subsequently underwent back surgery. She filed for benefits in April 1993, alleging that she was unable to work because of back and leg pain. The Social Security Administration denied Davis' application initially and upon reconsideration. Davis then requested and received an administrative hearing before an ALJ, who denied her application for benefits on the grounds that she was not disabled. The Appeals Council denied her request for review, and Davis brought suit in federal court. The district court concluded that the ALJ had not properly evaluated her subjective complaints of pain under Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), and remanded for that purpose.

The ALJ held a supplemental hearing and evaluated Davis' claim according to the five-step sequential analysis prescribed by the social security regulations. See 20 C.F.R. §§ 404.1520(a)-(f). The ALJ found that Davis met the disability insured status requirements since she had not engaged in substantial gainful activity from the date she became unable to work until the date she was last insured. The ALJ also determined that Davis had a severe physical impairment of post operative diskectomy and hemilaminectomy of the lumbar spine with residual back and leg pain, but that this impairment did not meet the level of severity required by the regulations.

The ALJ ultimately concluded that although Davis was unable to perform her past work as a sewing machine operator, she nevertheless possessed the residual functional capacity to perform a significant number of jobs in the national economy.

This conclusion was based on the testimony of a vocational expert in response to a hypothetical question posed by the ALJ. The expert was asked to consider whether jobs are available for an individual of Davis' age, education, and vocational profile with the residual functional capacity for "work which is no more than light or sedentary from an exertional standpoint, is unskilled in nature, where the work performed would . . . allow for alternate sitting and standing and would not require more than six hours sitting [or standing] during the course of an eight-hour day" and "which could be performed without frequent postural stress." The vocational expert responded that there are a significant number of such jobs available in the economy which Davis could perform. The ALJ also evaluated Davis' subjective allegations of pain in light of the Polaski factors, and determined that her allegations were not credible to the extent alleged. The ALJ consequently concluded that Davis was not disabled as defined by the Social Security Act and accordingly denied her application.

Davis asked the Appeals Council to review the ALJ's decision, and submitted with her appeal a January 1996 medical opinion from her treating physician, Dr. Kenneth Tonymon. This opinion, which was not before the ALJ, stated that Davis "is unable to pursue gainful employment and should be considered disabled." The Appeals Council concluded that Tonymon's opinion did not warrant reversal because Tonymon had not examined Davis since April 1995 and his statement was inconsistent with his previous opinions and not supported by clinical evidence. The Council denied the appeal, making the ALJ decision the final decision of the Commissioner. Davis then refiled in the district court pursuant to 42 U.S.C. § 405(g). The district court granted the Commissioner's motion for summary judgment, and this appeal followed.

Davis argues on appeal that the ALJ's decision denying benefits is not supported by substantial evidence in the record as a whole. According to Davis, the ALJ erred by failing to include in the hypothetical posed to the vocational expert any reference to the frequency of her need to alternate sitting and standing, her borderline intelligence, or her pain. Davis also maintains that the ALJ's functional capacity determination is

inconsistent with evidence in the record. The Commissioner responds that the hypothetical accurately set forth all of her impairments and that the ALJ properly weighed the evidence in determining her functional capacity. The Commissioner contends that the determination that Davis is not disabled is supported by substantial evidence in the record and must therefore be affirmed.

II.

Our task on review is to determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole. See Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000). Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). We may not reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently. Id.

Davis first argues that the hypothetical posed to the vocational expert was defective because it did not accurately set forth Davis' impairments. She contends that the hypothetical did not specify the frequency of her need to alternate sitting and standing, nor did it take into account her borderline intelligence or her pain. According to Davis, the vocational expert's opinion cannot constitute substantial evidence to support a conclusion of no disability because the hypothetical did not adequately present the full extent of Davis' impairments.

A hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ. See Prosch v. Apfel, 201 F.3d 1010, 1015 (8th Cir. 2000). The hypothetical here addressed Davis' need to sit and stand at will, and required the expert to limit her consideration to jobs which would "allow for alternate sitting and standing." In response to a specific question from the ALJ, the expert indicated that band attaching, polishing, mounting, and order clerk jobs

would permit Davis to sit *and* stand and would not require her to maintain a certain position for an extended period of time. These questions underscored Davis' need to sit and stand at will, and the vocational expert took this need into account in assessing the jobs Davis was capable of performing. The hypothetical was sufficient because it represented a valid assessment of Davis' physical limitations consistent with evidence in the record.

Davis also contends that the hypothetical was flawed because it did not refer to her borderline intelligence.[2] Davis claims that her borderline intelligence is a significant nonexertional impairment which must be evaluated by a vocational expert. As noted, a vocational expert need only consider impairments supported by substantial evidence in the record and accepted by the ALJ as true. See id. Although an IQ test can be "useful in determining whether an applicant has a mental impairment . . . other information in the record which indicates the individual's ability to function can be used to discredit the lone IQ score." Holland v. Apfel, 153 F.3d 620, 622 (8th Cir. 1998). Here, there was significant evidence available to support the ALJ's conclusion that Davis does not suffer from a severe mental impairment. Davis did not allege a disabling mental disorder in her application for benefits. She testified that she does not suffer from any learning disabilities, that she is capable of reading, writing, and doing arithmetic, and that she never failed any grades or took any special education classes. Moreover, Davis worked as a sewing machine operator for over twenty years without any functional difficulties. This evidence is sufficient to support the ALJ's finding that Davis' borderline intelligence did not constitute a significant nonexertional impairment, and he was not required to include it in the hypothetical.

[2]An intellectual evaluation administered in December 1994 indicated that Davis had a full scale IQ of 81. Davis claims this score indicates that she has borderline intellectual functioning capability. Dr. Atkinson, the psychologist who administered the test, indicated that this result places Davis in the "borderline retardation" range of intellectual functioning and that she is "moderately limited" in her ability to understand, remember, and carry out detailed instructions.

Davis also contends that the hypothetical was defective because it did not include her subjective allegations of leg and back pain. In accordance with the district court's instructions, the ALJ evaluated Davis' complaints in light of the five Polaski factors. After reviewing the record evidence, the ALJ concluded that her condition was not as bad as she had alleged. Sufficient evidence exists to support this conclusion. First, there was a discrepancy between Davis' medical treatment history and her subjective complaints. The record indicated that Davis had not made significant efforts to seek medical treatment to alleviate her alleged pain, and she was not taking any prescription medicine intended to treat such pain. The ALJ properly took this evidence into account in discrediting her complaints. See Shannon v. Chater, 54 F.3d 484, 487(8th Cir. 1995). The record also indicated that Davis participated in many normal daily activities inconsistent with her alleged symptoms. Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations. See Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987). Based upon this evidence the ALJ was entitled to discount Davis' complaints, and the hypothetical was not defective for failing to include them. Because the hypothetical properly characterized Davis' limitations, the vocational expert's testimony in response constitutes substantial evidence upon which the ALJ was entitled to rely in finding that Davis was not disabled.

Davis' second argument is that the ALJ's erred in concluding that she has the residual functional capacity for unskilled light work with a sit and stand option which does not require frequent postural functions. Davis contends that this finding is inconsistent with medical evidence in the record and with her subjective complaints of pain, depression, and carpal tunnel syndrome. According to Davis, the ALJ's conclusion is inconsistent with the opinion of her treating physician Dr. Kenneth Tonymon[3] and with the vocational limitations expressed by two consulting physicians,

---

[3]Davis initially contended that the ALJ "disregarded" Tonymon's January 1996 opinion that she is "is unable to pursue gainful employment and should be considered

Dr. Patrick O'Sullivan and Dr. Jere Disney. After examining the record, we conclude that the ALJ's functional capacity determination was supported by substantial evidence in the record. Although Tonymon's 1996 opinion was not before the ALJ, Davis did submit it to the Appeals Council in her request for review. The Appeals Council disregarded the opinion, noting that "Dr. Tonymon's statement does not say how or why she is now 'disabled,' does not provide any information and/or objective findings to support that opinion, and, more importantly, does not indicate that he examined her subsequent to April 1995." The conclusions of any medical expert may be rejected "if inconsistent with the medical record as a whole." See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). Here, not only was Tonymon's opinion unsupported by any clinical or medical evidence, but it was inconsistent with his previous diagnoses of Davis' condition. Substantial evidence existed on which to discredit Tonymon's opinion.

There were also significant conflicts between the testimonies of O'Sullivan and Disney, both of whom examined Davis within a five day period. The discrepancies noted by the ALJ were that O'Sullivan believed that Davis could lift up to 20 pounds, which was consistent with light work, but that she could only stand for two hours and sit for four hours in an eight hour day, or do either of these for only 30 minutes without interruption. Sullivan also found that she could "never" stoop, crouch, or engage in repetitive pushing or pulling of arm controls. Disney on the other hand opined that Davis could only lift and carry 10 pounds, which is consistent with sedentary work, but that she could stand or walk for up to six hours without interruption and could occasionally stoop or crouch. The ALJ noted that "there is a wide divergence in the opinions of these specialists and it is doubtful that either is particularly reliable." The ALJ was entitled to discredit these differing testimonies. See Bentley, 52 F.3d at 785

disabled." She concedes in her reply brief that this opinion was not before the ALJ when he rendered his decision and that the ALJ therefore did not err "by not mentioning Dr. Tonymon's [January 1996] opinion." App.R.Br. 3.

(stating that it is "ALJ's function to resolve conflicts among the various treating and examining physicians") (citations omitted). Instead of relying upon these inconsistent opinions, the ALJ properly based his functional capacity determination upon the opinion of the state agency medical consultant and upon the record as a whole. The ALJ noted that the record evidence, including Davis' treatment and prescription history, indicated that she did not suffer from a disabling physical impairment. He determined that Davis "cannot lift more than twenty pounds and requires a sit and stand option," thus giving credence to the one assessment in which O'Sullivan and Disney agreed.

The ALJ was also entitled to find that Davis' allegations of pain, carpel tunnel syndrome, and depression were not credible to the extent alleged. "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole," and the ALJ properly relied upon discrepancies between Davis' allegations of pain and her treatment history, medicinal selections, and daily activities in disregarding her subjective complaints. Polaski, 739 F.2d at 1322. In short, the ALJ's functional capacity determination was supported by substantial evidence in the record.

We accordingly affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-