# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2013

_____

Paul McCadney,

        Appellant,

v.

Michael J. Astrue, Commissioner,
Social Security Administration,

        Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the Eastern
\*   District of Arkansas.
\*
\*
\*
\*

_____

Submitted: January 18, 2008
Filed: March 17, 2008

_____

Before BYE, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Paul McCadney appeals the district court's order affirming the Commissioner's denial of social security disability and supplemental security income benefits. Because the opinion of the Administrative Law Judge (ALJ) is unclear in certain aspects, we reverse and remand for further proceedings.

## I.    BACKGROUND

At the time of his hearing before the ALJ, McCadney was a forty-eight-year-old man with a high school diploma, who has primarily worked as a truck driver. McCadney had a strong work history until he suffered a stroke in August 2002, his alleged disability onset date. He seeks both disability insurance benefits and supplemental security income.

The medical evidence shows that McCadney had extremely high blood pressure and vision problems in the months leading up to the stroke.  Starting in August 2002, McCadney's eye problems worsened, and he experienced tingling in his left arm and leg.  He saw a series of doctors between August 2002 and December 2002, and the objective medical evidence indicates that he suffered a stroke, and that his vision was affected by the stroke–20/25 in one eye and 20/50 in the other eye.

The next medical evaluation of consequence occurred two years later, in December 2004, when McCadney saw George DeRoeck, Psy. D., for a consultative examination at the request of the ALJ.[1]  This doctor found that McCadney suffered from dementia, adjustment disorder, avoidant personality disorder, slowed visual processing, significant vision deficits, and had impaired senses and reasoning ability. Dr. DeRoeck did find that McCadney's prognosis was "fair," and that he could perform in "some job settings" if the setting involved auditory (as opposed to visual) processing, and lowered social stress.

At the October 2004 hearing in front of the ALJ, McCadney testified that he is unable to drive for more than thirty minutes at a time because he loses concentration and forgets where he is going.  He reported blind spots in his vision, and has difficulty

---

[1]This examination actually took place *after* the hearing in front of the ALJ, which had occurred in October 2004.

focusing with both eyes. Due to the eye problems, McCadney suffers from headaches and his eyes are sensitive to light. In general, McCadney reported that he has a hard time thinking and loses track of whatever is going on in front of him. He has to concentrate very hard to do anything involving movement. His sister handles his finances because he forgets to pay his bills.

McCadney's sister, Loretta, testified that McCadney stays home most of the time and that she takes him to doctor appointments and to shop for groceries. She also cooks for him much of the time. She reported that he has few friends and forgets things. Other family friends and neighbors reported that McCadney was a good, hard worker until he suffered the stroke and that he has since deteriorated.

The ALJ determined that McCadney's residual functional capacity (RFC) was for medium work, with occasional crouching, bending or stooping, no heights, being able to follow simple directions, and with superficial interaction with the public. The RFC did not include any mental limitations, other than the fact that he needed simple instructions. The ALJ asked the vocational expert (VE) two hypothetical questions. One included the medium work limitations described above. The VE responded that this person could work as a cleaner or janitor. The second question covered the same limitations as the first, but also included someone with personality disorder, dementia, poor memory and concentration, and who would unlikely be able to work an eight-hour day or forty-hour work week due to those mental problems. The VE noted that there would be no work for this individual. Again, both hypothetical questions were asked at the October 2004 hearing in front of the ALJ and Dr. DeRoeck's examination had not yet occurred.

After receiving Dr. DeRoeck's report, the ALJ issued a written decision and affirmed the Commissioner's decision to deny benefits, finding that McCadney was not entirely credible in his subjective complaints, and that at step five of the familiar five-step analysis, McCadney was not disabled because there was work in the national

economy as a cleaner/janitor for people of his age, work history, and limitations. Regarding credibility, the ALJ found that the objective medical evidence did not support the level of disabling pain or the restrictive everyday lifestyle described by McCadney. Also, the ALJ noted that McCadney neither took prescription pain medication for his headaches, nor was fully compliant when taking blood pressure medication. The ALJ found that it was more likely that McCadney quit working at his most recent job because the plant closed, not because of a disability.[2] Finally, although the ALJ included a paragraph with the details of Dr. DeRoeck's report, the ALJ possibly did not include Dr. DeRoeck's findings within his determination of McCadney's RFC or the first hypothetical.

The district court affirmed the ALJ's decision. On appeal, McCadney argues that the ALJ erred by relying on the first hypothetical question because it did not incorporate all of his limitations, and that the ALJ improperly discredited McCadney's testimony regarding his limitations.

## II.    DISCUSSION

Our de novo review is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole. Raney v. Barnhart, 396 F.3d 1007, 1009 (8th Cir. 2005). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

After examining the record and the ALJ's decision, we find that substantial evidence does not support the ALJ's decision, primarily because we are unsure of

---

[2]On the other hand, the ALJ found that McCadney had met his burden on the first four steps of the sequential analysis, which would include proving that he cannot perform his past relevant work. And indeed, the ALJ noted that McCadney could not perform his past relevant work.

what, if any, weight the ALJ afforded to Dr. DeRoeck's opinion. As noted, the ALJ included a detailed accounting of Dr. DeRoeck's findings in the ALJ's written opinion. However, the ALJ did not include Dr. DeRoeck's diagnosis of dementia or other mental restrictions in its assessment of McCadney's functional restrictions, nor did it include the dementia diagnosis in the first hypothetical question posed to the vocational expert. Our primary difficulty is not with the possibility that the ALJ discounted Dr. DeRoeck's opinion, as an ALJ is free to discount a physician's report if the record warrants this. Wagner v. Astrue, 499 F.3d 842, 848 (8th Cir. 2007). The problem with the ALJ's opinion is that it is unclear whether the ALJ *did* discount Dr. DeRoeck's opinion, and, if it did so, why.

As noted, the most glaring omission from the hypothetical question is the absence of the dementia diagnosis or other meaningful mental restrictions. The government argues that nothing in Dr. DeRoeck's report warranted the inclusion of further restrictions. We disagree. Dr. DeRoeck definitively diagnosed McCadney with dementia, albeit mild dementia, personality disorders, and significant difficulties with visual processing. It would seem that these diagnoses would have an effect on McCadney's ability to work. Indeed, when dementia and other mental problems were included in an alternative hypothetical question, the VE testified that such an individual could not work. Quite possibly, the ALJ felt that the restrictions in the second, alternative hypothetical, were more restrictive than the results of Dr. DeRoeck's opinion warranted. We simply cannot determine from this record, however, what weight, if any, the ALJ gave to Dr. DeRoeck's report.

Accordingly, we remand for clarification. If the ALJ discounted Dr. DeRoeck's consultative examining opinion, it should explain why it did so. If the ALJ credited Dr. DeRoeck's opinion, but simply believed the first hypothetical adequately addressed Dr. DeRoeck's findings, the ALJ should explain how this is possible, given that the hypothetical contained no mental limitations other than "superficial" contact with others and that McCadney could only give or take "simple" directions. Of

course, the ALJ is also free to pose a completely new hypothetical to the VE as well. Because we remand on this basis, we express no opinion on whether the ALJ should revisit its findings with regard to McCadney's credibility.

## III.    CONCLUSION

We reverse and remand for proceedings consistent with this opinion.

_____