# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2984

_____

Gregory Smith

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Helena

_____

Submitted: April 17, 2014
Filed: June 25, 2014

_____

Before LOKEN and MURPHY, Circuit Judges, and PERRY,[1] District Judge.

_____

MURPHY, Circuit Judge.

Gregory Smith filed for disability insurance benefits, asserting that he was disabled due to post traumatic stress disorder (PTSD), arthritis, headaches, hearing problems, back and knee problems, and acid reflux. His application was denied by

_____

[1] The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

an administrative law judge (ALJ).  The Appeals Council then denied review, and Smith appealed the commissioner's final decision to the district court[2] which affirmed the denial of benefits.  Smith now appeals to this court.  We affirm.

Gregory Smith filed for disability insurance benefits with a protective filing date of May 15, 2008.  Smith, who was then 44, had previously worked as a truck driver, bus driver, laborer, machine operator, and forklift operator.  He also was in the Army National Guard from 1982 to 1992 and from 2001 to 2005.  According to Smith's application, he has been disabled since February 9, 2005 due to PTSD, arthritis, headaches, hearing problems, back and knee problems, and acid reflux.  His application reported daily back pain, "trouble getting along with people," and inability to focus on work.

A Department of the Army memorandum indicates that Smith was diagnosed with depression in April 2004.  Smith was then diagnosed with PTSD in December 2005 after a psychological evaluation by Dr. Sidney Ornduff, Ph.D., at the Veteran's Administration (VA) in Memphis, Tennessee.  Dr. Ornduff noted that after Smith's wife died in 2003, he was left to care for their children.  Smith said that during his deployment in Iraq, his Humvee was rear ended, causing back and knee injuries.  He had previously sought chiropractic treatment in 2005; x-rays of his lumbar spine at that time showed "early degeneration" and a whiplash injury.  The record shows that Smith has been treated by a number of providers at the VA for medical issues including depression, PTSD, back and knee pain, degenerative disc disease, and acid reflux.  He also received speech therapy for "mild cognitive defects."

In April 2008 Smith had an evaluation by Dr. Samuel Holcombe, Psy.D., for a potential increase in PTSD compensation, who noted that Smith was prescribed the

---

[2] The Honorable Jerome T. Kearney, United States Magistrate Judge for the Eastern District of Arkansas.

antidepressant Wellbutrin by Dr. Terako Amison, M.D., another of Smith's treating physicians at the VA. In May 2008 Dr. Amison provided a letter to Smith for his employer stating that he was being treated for depression and PTSD related to his deployment in Iraq. The letter stated that Smith had "problems with memory and concentration" and "issues with flashbacks and intrusive thoughts" that affected his ability to work. The letter also stated that Smith's medications sometimes caused sedation at work and that he required time off immediately. Smith says that he was asked to leave his job that May and applied for disability benefits with a protective filing date of May 15, 2008.

On August 4, 2008, Dr. David Webber, M.D., performed a consultative exam for the state disability agency. He diagnosed Smith with PTSD, low back pain, depression, and acid reflux. Dr. Webber found Smith's limitations were "moderate." An x-ray from this date showed mild degenerative disc and facet changes. Dr. Charles Spellman, Ph.D., performed a consultative mental diagnostic on August 12, finding that Smith's mental impairments did not "interfere with his day to day adaptive functioning" and that he could cope with "the typical cognitive demands of work like tasks."

Smith's VA service disability rating for PTSD was changed to 100% as of August 5, 2008. Smith also has multiple 10% disability ratings for other conditions. Dr. Clairressa Goad, Psy.D., a VA psychologist, performed a Compensation and Pension exam in early September 2008. She diagnosed Smith with severe PTSD and severe major depression by history. She wrote in her evaluation that Smith was a "walking time bomb" and that "[i]t is predicted that if he were in a work setting, he would eventually be fired or arrested for assaulting someone." The same month Dr. Jason Lake, M.D., a VA physician, evaluated Smith's knees and lumbar spine, concluding that Smith had mild arthritis in his left knee and mild degenerative disc disease but that he could do light duty at work.

Smith's disability benefits application was denied first on September 15, 2008, and then on reconsideration on November 26. Smith filed a request in January 2009 for a hearing before an ALJ. During this time he continued to receive treatment at the VA, and from 2009 through 2011 he attended meetings of a PTSD support group.

Dr. Amison, one of Smith's physicians at the VA, completed a medical opinion on October 23, 2009 regarding Smith's ability to do employment related activities and indicated that Smith was "unable to meet competitive standards" in certain categories of mental ability and attitude necessary for both unskilled and skilled work. Dr. Amison had previously noted in a March 2009 letter that Smith remained on Wellbutrin and Trazodone as needed for insomnia. Dr. Yan Cao, M.D., another VA physician, wrote a letter on October 29, 2009 stating that he had been treating Smith since August 2008 for low back pain secondary to degenerative disc disease of his lumbar spine, chronic left knee pain and right shoulder pain secondary to degenerative joint disease, and anxiety, major depression, and PTSD secondary to his deployment to Iraq. Dr. Cao wrote that in his opinion Smith was "unable to do sustained work on a regular and continuous basis."

The hearing before the ALJ was held on February 25, 2010. Smith came to the hearing with a cane and wearing a knee brace. He testified that he had last worked in May 2008 as a truck driver, a job that he held for about eight months. According to Smith, his depression and medication affected his ability to do that job, and he was asked to leave after being found sleeping several times. He subsequently collected unemployment for a short time. Smith testified that he lived alone and his children did not live with him. He did not drive much due to his medications although he had driven to the store the previous week. When asked about his daily activities, Smith said that he took medication and napped three to four times per day, needing to rest at least two hours daily.

At the hearing Smith's attorney referenced Dr. Goad's opinion that Smith was a "walking time bomb." Smith's attorney also stated that his mental state had affected his earlier job as a school bus driver. The ALJ presented a hypothetical to vocational expert Elizabeth Clem based on Smith's limitations. She was asked whether there were jobs for someone who could perform light work with occasional "postural activity," where interpersonal contact was incidental to the work performed, the complexity of tasks was learned and performed by rote with few variables, and the supervision required was simple, direct, and concrete. Clem testified that two such jobs would be machine operator or janitor.

After the hearing Dr. Barbara Felkins, M.D., reviewed Smith's medical records. She completed a medical source statement in which she stated that Smith would have no restrictions in understanding and remembering simple instructions, carrying out simple instructions, and making judgments on simple work related decisions. Dr. Felkins concluded however that Smith had moderate restrictions on appropriate interpersonal interactions and that he "would perform best in a work environment in which contact with the public would be incidental to work performed."

The ALJ denied Smith's claim on August 5, 2010 after conducting a five step eligibility analysis. See 20 C.F.R. § 404.1520(a). At the first step the ALJ found that Smith had not engaged in substantial gainful activity since his alleged onset date of February 9, 2005. See 20 C.F.R. § 404.1520(a)(4)(i). The ALJ concluded at the second step that Smith suffered from the severe impairments of degenerative disc disease of the lumbar spine, chronic left knee pain secondary to degenerative joint disease, anxiety, depression, and PTSD, but that Smith's headaches and acid reflux were not serious impairments. See 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ found at the third step that Smith did not have an impairment or combined impairments that met or equaled a "listed impairment." See 20 C.F.R. § 404.1520(a)(4)(iii). After assessing Smith's residual functional capacity (RFC), the ALJ then found at steps four and five that Smith could not perform his past relevant work but that he was able to

do other work and was not disabled.  See 20 C.F.R. § 404.1520(a)(4)(iv)–(v).  In conducting his analysis, the ALJ concluded that Smith's statements regarding his symptoms' "intensity, persistence, and limiting effects" were not credible to the extent they were inconsistent with the RFC.  The ALJ weighed the expert evidence and gave limited weight to the opinions of Dr. Amison and Dr. Cao, but significant weight to the state agency physicians' assessments and Dr. Felkins's medical source statement.

The Appeals Council denied review in April 2012, and Smith appealed the Commissioner's final decision to the district court under 42 U.S.C. § 405(g).  The district court affirmed on July 25, 2013, and his appeal from that decision is now before us.  We review de novo a decision of a district court affirming a denial of social security insurance benefits and affirm if the ALJ's decision is "supported by substantial evidence on the record as a whole."  Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011); 42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion."  Teague, 638 F.3d at 614 (citing Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)) (internal quotation marks omitted).  If the ALJ's decision is supported by substantial evidence, we may not reverse even if substantial evidence would support the opposite outcome or we would have decided differently.  Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001).

We defer to the ALJ's evaluation of Smith's credibility, provided that such determination is "supported by good reasons and substantial evidence," Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006), "even if every factor is not discussed in depth," Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001).  An ALJ weighs the credibility of a claimant's subjective complaints of pain by considering "the claimant's daily activities, the amount and frequency of pain, aggravating and precipitating factors, effectiveness of medication, and functional restrictions."  Clark v. Chater, 75 F.3d 414, 417 (8th Cir. 1996) (citing Polaski v. Heckler, 739 F.2d 1320, 1321–22 (8th Cir. 1984)).  The ALJ may discredit complaints that are "inconsistent with the

evidence as a whole." Id. Applying for unemployment benefits adversely affects credibility, although it is not conclusive, because an unemployment applicant "must hold himself out as available, willing and able to work." Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991). While the ALJ should consider the disability findings of other agencies, Smith's VA disability rating is not binding on the commissioner. Pelkey v. Barnhart, 433 F.3d 575, 579 (8th Cir. 2006); 20 C.F.R. § 404.1504.

Treating physicians' opinions are "entitled to special weight," but they are not automatically controlling and the ALJ must evaluate the record as a whole. Bentley v. Shalala, 52 F.3d 784, 785–86 (8th Cir. 1995). An ALJ may discount or disregard a treating physician's opinion "where other medical assessments 'are supported by better or more thorough medical evidence,' or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (internal citation omitted).

Smith argues that the ALJ erred because the evidence in the record does not support the determination of his RFC or his limitations as presented in the ALJ's hypothetical, and thus the hypothetical provided to the vocational expert did not properly describe Smith's limitations. Smith argues that the ALJ erred in giving less weight to the opinions of treating physicians Dr. Amison and Dr. Cao. Smith asserts that Dr. Amison had access to all of his VA treatment records, that Dr. Amison's opinion was not conclusory and was supported by Dr. Goad's opinion, and that Dr. Amison's treatment records provided sufficient clinical and laboratory evidence. Smith further asserts that the ALJ erred in relying on the opinions of Dr. Felkins, who never examined him, and Dr. Spellman, who only saw him once. Smith argues that the ALJ's finding that he could do light work was inconsistent with Dr. Cao's opinion and that the ALJ erred in discrediting Dr. Cao's opinion for the same reasons that he erred in discrediting Dr. Amison's opinion.

The commissioner responds that the denial of benefits was supported by substantial evidence and that the ALJ properly gave limited weight to the opinions of Dr. Amison and Dr. Cao. The commissioner asserts that substantial evidence conflicted with Dr. Amison's opinions, referencing the opinions of Dr. Cao, Dr. Holcombe, Dr. Goad, and Dr. Spellman regarding Smith's memory issues and mental impairments. The commissioner also asserts that Dr. Amison provided conclusory opinions on Smith's ability to maintain employment, an issue properly determined by the commissioner, Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010), as well as opinions without "supporting objective medical findings." The commissioner further argues that the ALJ properly gave limited weight to Dr. Cao's opinion because there was a lack of objective medical evidence, concluding that other evidence contradicted his findings, and that his opinion that Smith could not maintain employment was conclusory. Finally she argues that the ALJ's hypothetical was properly worded because substantial evidence supported the stated limitations.

We conclude that the ALJ did not err in denying Smith benefits because his decision was supported by substantial evidence on the record. This court cannot "reweigh the evidence or review the factual record de novo." Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994). The ALJ considered Smith's VA disability rating, but it is not binding. See Pelkey, 433 F.3d at 579; 20 C.F.R. § 404.1504. The ALJ gave it "limited weight" because he found it was inconsistent with the record. The ALJ also found that Smith was not credible based on multiple factors, including his application's description of his daily activities and the fact that he collected unemployment payments after his alleged onset date. Jernigan, 948 F.2d at 1074. The ALJ noted that Smith had worked after his alleged onset date, that he was "able independently and effectively to perform a wide range of adaptive activities," that his treatment had been "essentially routine and/or conservative in nature," and that he did not take narcotic medications for pain relief. The ALJ also gave "some slight weight" to the "lack of debilitating symptoms" shown by Smith at the hearing.

After considering all treating sources, the ALJ found "no detailed, clinical, and/or diagnostic evidence" in the record supporting Smith's alleged "work disabling limitations." The ALJ gave significant weight to the state agency physical and mental assessments, and to Dr. Felkins's opinion. Treating physicians' opinions may be discounted if contradicted by "better or more thorough medical evidence." Prosch, 201 F.3d at 1013 (internal quotation marks omitted). Here the ALJ gave reasons for giving limited weight to the opinions of Dr. Amison and Dr. Cao, including a lack of substantial support for their opinions from other record evidence and a lack of evidence of clinical and laboratory abnormalities. We also conclude that the ALJ properly phrased the hypothetical to the vocational expert, recognizing that a hypothetical need only include impairments that the ALJ finds credible. Forte v. Barnhart, 377 F.3d 892, 897 (8th Cir. 2004).

Based on this record and the applicable law, we affirm the denial of benefits.

_____