# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3050

_____

Penny Sue Grable

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: September 11, 2014
Filed: November 6, 2014

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Penny Sue Grable applied for disability insurance benefits, asserting that she had difficulty breathing and painful joints. An administrative law judge (ALJ) denied her application, and the Appeals Council denied review. Grable appealed to the

district court[1] which remanded the case. On remand, the Appeals Council directed the ALJ to review Grable's claim with the subsequent application she had filed for disability insurance benefits during the pendency of the appeal. In the insurance application Grable alleged that she was disabled due to chronic obstructive pulmonary disease, heart problems, fibromyalgia, chronic pain syndrome, and swelling in her legs and feet. The ALJ denied her consolidated application, and the Appeals Council denied review. Grable appealed the commissioner's final decision to the district court which affirmed the denial of benefits. Grable now appeals to this court. We affirm.

Grable applied for disability insurance benefits under Title II of the Social Security Act in November 2005. She was 44 years old at the time and alleged that she had been disabled since July 30, 2004 due to breathing problems and painful joints. Her application reported that she had worked as a secretary, ticketing agent, and file clerk. She had been laid off from her most recent job as a title searcher and had collected unemployment benefits from August to November 2004.

Prior to her alleged onset date, Grable consulted her family physician, Dr. Chris Sandberg, M.D., who diagnosed her with chest wall pain, dyspnea, and gastroesophageal reflux disease. Grable continued to see Dr. Sandberg throughout the relevant time period. Following his initial diagnosis, Dr. Sandberg concluded in May 2007 that Grable suffered from allergic rhinitis and fibromyalgia as well. He stated that Grable could not sit or stand for lengthy periods, and that she suffered from muscle cramps and blurred vision. A few months later, Dr. Sandberg examined Grable again and diagnosed her with hypertension, asthma, bursitis of the hip, and fibromyalgia. In October 2007, he diagnosed Grable with anxiety disorder as well.

---

[1] The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

Grable also consulted with rheumatologist Dr. Arnold Katz, M.D., who found that Grable did not "have the more limited and localized tenderness that [one] would expect to find with fibromyalgia." Rather, her symptoms were more consistent with chronic pain syndrome because she displayed diffuse tenderness all over her body. Dr. Katz examined Grable throughout the relevant time period and consistently diagnosed her with chronic pain syndrome, not fibromyalgia.

On September 5, 2008 the ALJ issued a decision finding Grable not disabled. The ALJ concluded that even if Grable suffered from fibromyalgia, she was able to perform past relevant work as a ticketing agent and title searcher. The Appeals Council denied review, and Grable appealed to the district court. At the same time Grable filed another application for disability insurance benefits, alleging that she had chronic obstructive pulmonary disease, heart problems, fibromyalgia, chronic pain syndrome, and swelling in her legs and feet. The district court remanded the case, and the Appeals Council directed the ALJ to review Grable's second application with the remanded claim. It also instructed the ALJ to evaluate Dr. Sandberg's opinion and compare Grable's residual functional capacity to the demands of her previous work.

The ALJ held two additional hearings on remand. At the first hearing in November 2011 medical expert Dr. Anne Winkler, M.D., testified about Grable's physical impairments. Based on Grable's medical records, she found that Grable had problems with hypertension, asthma, irritable bowel syndrome, chronic pain, and obesity. She opined that Grable did not meet the criteria for fibromyalgia, and that her chronic pain could be explained by Vitamin D deficiency. Although Grable appeared to have ongoing mental problems as well, Dr. Winkler testified that a psychologist would be better suited to assess those impairments. As such, Dr. Nora Clark, Ph.D., evaluated Grable and found that she had mildly impaired attention span, severely impaired concentration, and moderately impaired short term memory. However, based on the results of the Minnesota Multiphasic Personality Inventory (MMPI), she concluded that Grable may have exaggerated her symptoms.

Dr. V. Nanda Kumar, M.D., a neurologist, examined Grable as well. As in Dr. Sandberg's early reports, he found that Grable "had multiple problems with severe pain affecting both upper and lower extremities leading to fatigue." He opined that Grable could not carry more than 10 pounds; sit more than two hours in a workday; bend, crawl or crouch; or perform jobs which require bilateral manual dexterity. In view of these findings, Dr. Kumar diagnosed Grable with moderately severe fibromyalgia, bilateral radiculopathy, and post laminectomy pain syndrome.

At the second hearing in March 2011 medical expert Dr. Nancy Winfrey, Ph.D., testified as to the results of Grable's mental health evaluation. She explained that the MMPI results were invalid because of a very high "lie scale" score. She also found inconsistencies in Dr. Clark's notes and concluded that Grable's mental limitations were not severe. A vocational expert also testified at the hearing and concluded that Grable could perform her past work as a file clerk and other "unskilled work" as an electronics subassembler, bench assembler, and flatwork finisher.

After conducting the five step eligibility analysis set out in 20 C.F.R. § 404.1520, the ALJ denied Grable's consolidated application. The ALJ concluded that Grable last met the insured status requirements on December 31, 2009, and that she had not engaged in gainful employment since July 30, 2004. See 20 C.F.R. § 404.1520(b). The ALJ then determined that Grable had severe impairments of diffuse pain, mild asthma, mild obesity, and depressive disorder. See 20 C.F.R. § 404.1520(c). At the third step of the analysis the ALJ concluded that none of Grable's impairments satisfied the criteria of an impairment listed in Appendix 1 to Subpart P of Part 404 of the Code of Federal Regulations. See 20 C.F.R. § 404.1520(d).

Before reaching the fourth step, the ALJ considered the intensity of Grable's symptoms in order to establish her residual functional capacity. In doing so, the ALJ gave "great weight" to Dr. Winkler's opinion that Grable was capable of performing light work. According to the ALJ, Dr. Winkler was not only qualified to evaluate

-4-

fibromyalgia as a rheumatologist, but her opinion that Grable did not have the disease cohered with Dr. Katz's diagnosis. The ALJ similarly afforded "great weight" to Dr. Winfrey's testimony because her expertise allowed her to conclude that Grable's allegations lacked credibility. The ALJ did not however give "great weight" to the opinions of Dr. Sandberg or Dr. Kumar. In the ALJ's view, Dr. Sandberg was less qualified to assess fibromyalgia because he lacked expertise as a family practitioner. Dr. Sandberg's opinion also contradicted Dr. Katz's opinion that Grable did not have fibromyalgia. The ALJ discounted Dr. Kumar's opinion for the same reasons and because his examination did not reveal "tender points associated with fibromyalgia."

In deciding the extent of Grable's impairments, the ALJ reviewed Grable's own complaints and found them to lack credibility. Although Grable complained of fibromyalgia, cardiac disease, and other neurological disorders, the expert testimony contradicted her claims. Moreover, Dr. Clark's examination revealed a history of symptom embellishment, and Grable's attempt to collect unemployment benefits at the same time she alleged disability further undermined her credibility. Given Grable's lack of credibility and the expert testimony of Dr. Winkler and Dr. Winfrey, the ALJ determined that Grable had the residual functional capacity to do light work.

At the fourth step of the analysis, the ALJ determined that Grable was not disabled under the Social Security Act because she could perform her past relevant work as a file clerk. See 20 C.F.R. § 404.1520(f). The ALJ similarly concluded at the fifth step of the analysis that Grable was not disabled because she could perform other unskilled occupations such as electronics subassembler, bench assembler, and flat work finisher. See 20 C.F.R. § 404.1520(g). The ALJ therefore denied Grable's consolidated application for disability insurance benefits.

Grable appealed the denial, and the Appeals Council denied review. Grable then filed this action, seeking review of the commissioner's final decision under 42 U.S.C. § 405(g). The district court affirmed, and Grable now appeals to this court

arguing that the ALJ's decision was not based on substantial evidence. We review de novo the district court's affirmance of a denial of disability insurance benefits. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). We affirm if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence in the record as a whole. Id. Substantial evidence is less than a preponderance of the evidence, but is "such relevant evidence as a reasonable mind would find adequate to support the commissioner's conclusion." Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). We may not reverse simply because we would have decided differently or because substantial evidence supports a contrary outcome. Id.

Grable argues that the ALJ should have given controlling weight to the opinions of Dr. Sandberg and Dr. Kumar because they were her treating physicians. She also asserts that the ALJ erred in giving "great weight" to Dr. Winkler's opinion because she was not a treating physician. We disagree. A treating physician's opinion is not automatically controlling. Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014). We generally give greater weight to the opinion of a specialist about medical issues in the area of specialty. Brown v. Astrue, 611 F.3d 941, 953 (8th Cir. 2010). An ALJ may "discount or disregard a treating physician's opinion where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Smith v. Colvin, 756 F.3d 621, 625–26 (8th Cir. 2014).

That is precisely what the ALJ did here. Although Dr. Sandberg and Dr. Kumar opined that Grable's fibromyalgia played a significant role in limiting her ability to work, their diagnoses contradicted the opinions of Dr. Winkler and Dr. Katz. See Hensley v. Barnhart, 352 F.3d 353, 356 (8th Cir. 2003). Based on their expertise in rheumatology, Dr. Winkler and Dr. Katz had both concluded that Grable did not have "the more limited and localized tenderness [they] would expect to find with fibromyalgia." Cf. Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999). Moreover, Dr. Sandberg's diagnosis changed over the relevant time period whereas

-6-

Dr. Winkler and Dr. Katz consistently declared that Grable did not have fibromyalgia. See Smith, 756 F.3d at 626. For these reasons we conclude that the ALJ did not err in giving greater weight to Dr. Winkler's expert testimony than to the testimony of Dr. Sandberg or Dr. Kumar.

Grable similarly contends that the ALJ erred by not seeking clarification from Dr. Sandberg about his opinion and in not stating the amount of weight given to it. An ALJ is not required to seek "clarifying statements from a treating physician unless a crucial issue is undeveloped." Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). That is not the case here. The ALJ considered numerous medical assessments and records in weighing Dr. Sandberg's opinion. No further clarification was required. Id. Nor was the ALJ required to state the amount of weight given to Dr. Sandberg's opinion. An ALJ need only clarify whether it "discount[ed] [a treating physician's] findings, and, if it did so, why." McCadney v. Astrue, 519 F.3d 764, 767 (8th Cir. 2008). The ALJ satisfied that obligation by expressly refusing to give Dr. Sandberg's opinion "great weight" and then explaining its reasons for doing so.

Grable further argues that the ALJ's decision was not based on substantial evidence because it incorrectly assessed her credibility, failed to analyze her obesity and make findings about the demands of her prior work as a file clerk, and improperly relied on the vocational expert's testimony. We defer to the ALJ's evaluation of Grable's credibility provided that this determination is supported by "good reasons and substantial evidence." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). In view of the record before us, the ALJ had good reason and substantial evidence to question Grable's credibility. Dr. Clark declared that Grable may have exaggerated her disability, and Dr. Winfrey testified that the MMPI results displayed a very high "lie scale" score. The ALJ properly found Grable lacked credibility given this evidence of symptom exaggeration. Baker v. Barnhart, 457 F.3d 882, 892 (8th Cir. 2006). Her collection of unemployment benefits during the period of her claimed disability reinforced this conclusion. Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir.

1994). To the extent Grable alternatively suggests that the ALJ erred by assessing her credibility after determining her residual functional capacity, the record shows otherwise. The ALJ cited significant evidence in discounting Grable's credibility before concluding that she could perform "work of light exertion."

We also conclude that the ALJ considered Grable's obesity and made findings about the demands of her prior work as a file clerk. The ALJ expressly referred to Grable's obesity in concluding that her residual functional capacity was limited to light work because she could only occasionally climb stairs, kneel or stoop, and she could not climb ladders, ropes, or scaffolds. See Brown v. Barnhart, 388 F.3d 1150, 1153 (8th Cir. 2004). Furthermore, the ALJ made "findings regarding the physical and mental demands of [her] past work" as a file clerk. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). At the March 2011 hearing the ALJ questioned the vocational expert about the duties of a file clerk, and the expert explained those duties in view of Grable's work history report. The ALJ then compared those demands to Grable's residual functional capacity in concluding that she was physically and mentally capable of performing the "semi-skilled work" of a file clerk.

Finally, the ALJ did not err in relying on the vocational expert's testimony. Although the vocational expert recommended the job of flat work finisher despite Grable's inability to perform such work, one mistaken recommendation does not devalue the rest of her opinion. Weiler v. Apfel, 179 F.3d 1107, 1110–111 (8th Cir. 1999). An ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy the claimant's residual functional capacity. Id. Here, the vocational expert testified that Grable could perform her past work as a file clerk and other "unskilled occupations" such as an electronics subassembler and bench assembler. Grable's mental and physical condition, age, and education fully support her ability to perform these jobs. Thus, the ALJ did not err in relying on the vocational expert's testimony.

Based on this record and the applicable law, we affirm the denial of benefits.

_____