# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1779
_____

Angela C. Myers,

*Plaintiff - Appellant*,

v.

Carolyn W. Colvin, Commissioner of Social Security,[1]

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 17, 2013
Filed: July 18, 2013

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

---

[1]Acting Commissioner Colvin is substituted for her predecessor pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Angela Myers appeals the judgment of the district court[2] upholding the denial of her application for Social Security disability benefits, disability insurance benefits, and supplemental security income. We affirm.

## I.

Myers worked full time as a licensed practical nurse from 1996 to 2007, when she switched to part-time work until her resignation in March 2008. She began to receive treatment for depression and anxiety on approximately a monthly basis from Dr. Matthew Horvath in November 2006. Dr. Horvath diagnosed Myers with dysthymic disorder, anxiety disorder not otherwise specified, and borderline personality disorder.

Dr. Horvath's notes consistently indicated that Myers's depression and anxiety varied with life stressors—particularly the stress from her nursing job—and that her symptoms responded to medication. After Myers's alleged disability onset date, Dr. Horvath also estimated Myers's Global Assessment of Functioning ("GAF") score on five occasions. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000). Four times, the estimated GAF score indicated only "moderate difficulty" in social or occupational functioning; only once did the score reflect a "serious impairment." *Id.* In his July 2009 opinion of Myers's ability to perform work-related activities, however, Dr. Horvath stated that Myers suffered from "[m]arked" difficulties in social functioning and in maintaining concentration, persistence, and pace, and that she experienced four or more extended episodes of decompensation.

---

[2]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

In August 2009, Myers saw Dr. Kevin Mace with complaints of shortness of breath. Dr. Mace developed a plan for Myers that included "wear[ing] compression stockings while active," and they "discussed diet and exercise at length."

Myers applied for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and protectively applied for supplemental security income under Title XVI of the Act, *id.* § 1382, claiming a disability onset date of March 20, 2008. Her disability claims were based on depression, anxiety, self-harm behavior, and sleep apnea. The Social Security Administration ("SSA") denied Myers's claims after initial review. In reaching its decision, the SSA relied in part on the evaluation of a state agency medical consultant who concluded that Myers's concentration and pace suffered with increased stress, but that her impairments did not meet or equal a medical listing as required by the regulations. Myers sought reconsideration, and the SSA again denied her claims.

Myers then requested a hearing before an administrative law judge ("ALJ"). Following a hearing at which Myers appeared and was represented by counsel, the ALJ determined that Myers was not entitled to benefits, because she was not disabled. The ALJ followed the familiar five-step process outlined in 20 C.F.R. §§ 404.1520 and 416.920. *See, e.g.*, *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004). At step one, the ALJ determined that Myers had not engaged in substantial gainful activity since her alleged disability onset date. The ALJ concluded at step two that Myers's major depression, dysthymic disorder, anxiety disorder not otherwise specified, borderline personality disorder, obesity, asthma/COPD, and obstructive sleep apnea constituted severe impairments that, "when considered in combination, could reasonably be expected to impose work-related limitations."

At step three, the ALJ found that Myers's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ expressly considered Listing 12.04 and concluded that Myers did not meet

or equal it. He concluded that she suffered only from "mild to moderate" restrictions or difficulties in daily activities, social functioning, and maintaining concentration. He also determined that Myers experienced no episodes of decompensation, which the regulations define as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). The ALJ gave Dr. Horvath's July 2009 opinion about "marked difficulties" less than controlling weight, because he thought the opinion was inconsistent with the treatment record.

The ALJ concluded at step four that Myers was unable to perform her past relevant work as a licensed practical nurse, but that she had the residual functional capacity ("RFC") to perform light work with certain physical and psychological restrictions. The ALJ found that Myers's statements about the intensity, persistence, and limiting effects of her symptoms were not fully credible because they were inconsistent with evidence that her symptoms were responsive to medication, and with medical reports and testimony from others showing that Myers "continued to engage in a variety of activities of daily living," "maintain[ed] regular social contacts," and "did not want to work."

Finally, at step five, the ALJ concluded that Myers could perform jobs that exist in significant numbers in the national economy, so she was not disabled within the meaning of the Social Security Act. The ALJ relied on a vocational expert's testimony that an individual with Myers's age, education, past relevant work experience, and RFC could work as a blind aide, a companion, or a personal attendant.

Myers sought review by the Appeals Council, and submitted records showing that she admitted herself to the emergency room at Iowa Lutheran Hospital for treatment of depression on September 20, 2010. The Appeals Council considered this

additional evidence and denied Myers's request for review. The district court upheld the Commissioner's decision. Myers now appeals.

## II.

We review *de novo* the district court's decision affirming the denial of social security benefits, and we will affirm "if the Commissioner's decision is supported by substantial evidence on the record as a whole." *Davidson v. Astrue*, 578 F.3d 838, 841 (8th Cir. 2009) (internal quotation omitted). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). We consider the entire record, but we will not reverse the Commissioner's decision if substantial evidence supports it, "even if substantial evidence could have been marshaled in support of a different outcome." *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007). To the extent that Myers challenges legal conclusions, we review the ALJ's determinations *de novo*. *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010).

Myers first argues that the ALJ lacked substantial evidence to determine that her impairments do not meet or equal a listed impairment. The severity determination occurs at step three of the sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The ALJ must determine whether a "medical equivalence" exists between a claimant's impairment and a listed impairment. *Id.* §§ 404.1526(e), 416.926(e). To be medically equivalent, a claimant's impairment must be "at least equal in severity and duration to the criteria of any listed impairment." *Id.* §§ 404.1526(a), 416.926(a). In determining severity, an ALJ must give controlling weight to a treating source's opinion if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case

record." *Id.* §§ 404.1527(c)(2), 416.927(c)(2). If medical equivalence is established, the claimant will be found disabled. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Myers argues primarily that the ALJ was required to give Dr. Horvath's opinion controlling weight. A treating source's opinion is not "inherently entitled" to controlling weight. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). Because the regulations only accord such weight to source opinions if they are "not inconsistent with the other substantial evidence," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), we have upheld an ALJ's decision to discount a treating physician's opinions where those opinions were internally inconsistent, *see Prosch*, 201 F.3d at 1013, and where the physician's opinion was inconsistent with the claimant's own testimony. *See Hacker*, 459 F.3d at 937-38.

Myers argues that Dr. Horvath's opinion was consistent with his treatment notes, so the ALJ's decision to discount it as inconsistent with the treatment record is not supported by substantial evidence. We disagree. Dr. Horvath's July 2009 opinion concluded that Myers suffered from "[m]arked" limitations in social functioning. The regulations define "marked" to mean "more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). On all but one occasion throughout Dr. Horvath's treatment of Myers—including four of the five times he estimated her score after her alleged onset date—the doctor estimated Myers's GAF score in a range indicating at worst "moderate difficulty in social[ or] occupational . . . functioning." *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000). Although the SSA does not consider GAF scores to "have a direct correlation to the severity requirements," Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000), we have considered GAF scores in reviewing an ALJ's determination that a treating source's opinion was inconsistent with the treatment record. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). And while Dr. Horvath's opinion indicated that Myers suffered from four or more extended episodes

of decompensation, his treatment notes do not show "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning . . . each lasting for at least 2 weeks," as required by the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). We conclude that substantial evidence supports the ALJ's determination that Dr. Horvath's opinion was inconsistent with the treatment record and thus not entitled to controlling weight.

Substantial evidence likewise supports the ALJ's determination that Myers's impairments did not meet or equal a medical listing. Myers contends that her impairments are medically equivalent to Listing 12.04. *See id.* § 12.04. There are two ways for a claimant to show that her impairment meets or equals Listing 12.04. First, a claimant can demonstrate that she suffers from one of the conditions enumerated in the listing, which results in at least two of the paragraph B criteria: (1) "marked restriction" of daily living activities, (2) "marked difficulties in maintaining social functioning," (3) "marked difficulties in maintaining concentration, persistence, or pace," and (4) "[r]epeated episodes of decompensation" of "extended duration." *Id.* § 12.04(A), (B). Second, a claimant can show a documented chronic affective disorder resulting in at least one of the paragraph C criteria: extended episodes of decompensation, a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," or a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement." *Id.* § 12.04(C). The ALJ found that Myers's impairments did not satisfy the criteria of either paragraph B or paragraph C. Myers argues that she satisfied both routes to medical equivalence.

Because Dr. Horvath's opinion was not entitled to controlling weight, the ALJ properly considered all "mental evaluations of record" in making the severity determination. Dr. Horvath's treatment notes and opinion indicate only mild limitations in daily living, and Dr. Horvath's notes and the state consultant's

evaluation show mild to moderate difficulties in social functioning and no episodes of decompensation. Substantial evidence thus supports the ALJ's determination that Myers did not satisfy at least two of the paragraph B criteria.

Because Myers had not suffered extended episodes of decompensation between the alleged onset date and the ALJ's decision, or demonstrated a sufficient susceptibility to such episodes, she could satisfy the paragraph C criteria only by showing a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement." *Id.* Pt. 404, Subpt. P, App. 1, § 12.04(C)(3). The regulations define "highly supportive" settings to include hospitals, halfway houses, care facilities, and personal home settings that "greatly reduce the mental demands placed on [the claimant]." *Id.* Pt. 404, Subpt. P, App. 1, § 12.00(F). Myers testified that she lives in her two-bedroom apartment with her boyfriend and did not indicate any particular arrangements to reduce her mental demands. Thus, the ALJ's determination that Myers did not satisfy the paragraph C criteria is supported by the record.

The additional evidence considered by the Appeals Council does not alter this result. Myers admitted herself to the hospital for depression-related symptoms on September 20, 2010—over five months after the ALJ's decision closed Myers's application. An application for disability benefits remains in effect only until the issuance of a "hearing decision" on that application, so the evidence of her admission cannot affect the validity of the ALJ's determination. *See* 20 C.F.R. §§ 404.620(a), 416.330. Thus, after considering how the ALJ would have weighed the new evidence, *see Flynn v. Chater*, 107 F.3d 617, 622 (8th Cir. 1997), the ALJ's determination that Myers did not satisfy the paragraph B or C criteria is supported by the record.

Myers next argues that the RFC determination is not supported by substantial evidence. The ALJ concluded that Myers had the RFC to "lift 20 pounds

-8-

occasionally and 10 pounds frequently" and "stand and walk, combined, for 6 hours in an 8-hour workday," with "mild to moderate limits on activities of daily living[,] social functioning and concentration, persistence and pace." Myers bifurcates her argument, contending that sufficient evidence supports neither the "mental" nor the "physical" component of the RFC determination. Myers's argument on the mental component is contingent on her argument that the ALJ was required to accord Dr. Horvath's opinion controlling weight. Because we have concluded that the ALJ properly discounted Dr. Horvath's opinion, Myers's contention about the mental component fails, and we address only the physical component in detail.

"The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The RFC must be supported by "at least some medical evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (internal quotation omitted). Myers argues that the ALJ failed to consider her obesity and breathing limitations in determining her RFC, did not consider at least some medical evidence, and did not develop the record as to her physical limitations.

The ALJ expressly considered the SSA's standards for factoring obesity into RFC determinations, *see* Social Security Ruling 02-1p, 67 Fed. Reg. 57859, 2002 WL 31026506 (Sep. 12, 2002), cited Myers's responsiveness to treatment for asthma, and noted Myers's noncompliance with her sleep apnea treatment. The record also demonstrates that when Myers received treatment from Dr. Mace for shortness of breath, he prescribed "wear[ing] compression stockings while active" and "discussed diet and exercise at length." In the absence of other evidence in the record, a physician's unrestricted recommendations to increase physical exercise are inconsistent with a claim of physical limitations. *Cf. Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Plus, in her application to the SSA, Myers stated that as a nurse, she had walked for six hours per day; spent significant time stooping, kneeling,

crouching, and reaching; frequently lifted 25 pounds; and "once in a while" lifted 100 pounds or more. Substantial evidence thus supports the physical component of the RFC determination. The ALJ was not required to supplement the record with clarifications from Myers's treating sources or with a consultative examination, because no "crucial issue" in the record required development. *Goff*, 421 F.3d at 791 (internal quotation omitted); *see* 20 C.F.R. §§ 404.1512(e), 416.912(e). Because the RFC finding was supported by substantial evidence, it was proper for the ALJ to consider testimony of a vocational expert that was premised on the RFC.

Myers next argues that the ALJ's credibility determination "is the product of legal errors." Pursuant to Social Security Ruling 96-07p, 1996 WL 374186 (July 2, 1996), the ALJ found that Myers's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [the RFC determination]." The ALJ considered the factors enumerated in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and was not required to discuss each factor's weight in the credibility calculus. *Samons v. Astrue*, 497 F.3d 813, 820 (8th Cir. 2007). The ALJ explained that medical reports, testimony, and statements by third parties showing that Myers "responded to and reported benefit from drug therapies," that she continued to engage in "a variety of activities of daily living," and that she "did not want to work" were inconsistent with her testimony that her depression, anxiety, and inability to concentrate rendered her unable to work. It was not error for the ALJ to phrase the credibility determination in terms of the RFC determination where the ALJ provided thorough analysis of the credibility issue that relied on more than the absence of objective medical evidence. *See Wiese v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2009). We conclude that the ALJ did not err in determining Myers's credibility.

\*　　　\*　　　\*

For the foregoing reasons, the judgment of the district court is affirmed.

_____