# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2234

_____

Robert James Blackburn

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Commissioner of Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Dubuque

_____

Submitted: April 16, 2014
Filed: July 31, 2014

_____

Before LOKEN and MURPHY, Circuit Judges, and LIMBAUGH,[1] District Judge.

_____

MURPHY, Circuit Judge.

Robert James Blackburn filed for disability insurance benefits and supplemental security income (SSI) benefits, alleging that he was disabled due to bipolar disorder, severe explosive disorder, post traumatic stress disorder (PTSD),

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

and attention deficit hyperactivity disorder (ADHD). After a hearing before an administrative law judge (ALJ), Blackburn's application was denied. The Appeals Council denied review and Blackburn appealed the Commissioner's final decision to the district court[2] which affirmed. Blackburn now appeals to this court. After full consideration, we now affirm.

In March 2010 Blackburn applied for disability insurance benefits under Title II and SSI benefits under Title XVI of the Social Security Act. Blackburn, who was 28 years old at the time, alleged that he had been disabled since April 1, 2009 due to bipolar disorder, severe explosive disorder, PTSD, and ADHD. According to his application he had stopped working as a roofer in March 2009 due to his medical conditions. He had previously worked in distribution, manufacturing, and construction. Blackburn reported that he lived with various family members. He watched over his children sometimes and visited them. He prepared his own meals daily and shopped for food once a month. He did not go out much unless he had appointments, because he was not comfortable with people and experienced anxiety. He stated that he was irritable, moody, and angry which created problems getting along with others.

Prior to his alleged onset date, Blackburn was hospitalized for depression with suicidal ideation in August 2008. Blackburn subsequently received medical care at Hillcrest Family Services between November 2008 and the hearing date in September 2011. Most of his appointments were with Sarah Justmann, an advanced registered nurse practitioner (ARNP). Blackburn had Global Assessment of Functioning (GAF) scores assessed between August 2008 and June 2011. Out of twenty one such assessments in the record, Blackburn had five scores in the "mild" range (61–70) and

---

[2] The Honorable Jon Stuart Scoles, Chief Magistrate Judge, United States District Court for the Northern District of Iowa.

six scores in the "moderate" range (51–60); the remaining ten scores were in the "severe" range (41–50).

In May 2010 Dr. Keith Gibson, Ph.D., a psychologist, conducted a consultative exam for the Iowa Disability Determination Service. Blackburn arrived on time and was cooperative. He scored 24 out of 30 points on a "mini mental status exam" which Dr. Gibson noted was consistent with a history of ADHD and "inadequate schooling." Blackburn reported that he fixed his own meals and "usually stay[ed] in during the week and like[d] to watch movies." He spent time with his oldest child on weekends and went to the library; they had recently gone fishing. Dr. Gibson noted that Blackburn's emotional instability and ADHD "significantly impair[ed] [his] capacity to maintain attention, concentration, and pace sufficient for a full-time gainful environment" and he was most severely impaired in interpersonal relationships. Dr. Gibson concluded however that Blackburn "retain[ed] the cognitive capacity to respond adaptively and flexibly to changes in the work place, especially in solitary work environments, but not so much in work environment[s] which require appropriate interactions with others." According to Dr. Gibson, Blackburn appeared "capable of remembering and understanding simple instructions, procedures, and locations in a work setting."

The same month Dr. Jennifer Ryan, Ph.D., conducted a mental residual functional capacity assessment and psychiatric review based on Blackburn's medical record. She concluded Blackburn was not significantly limited in understanding and memory and was at most moderately limited in the areas of sustained concentration and persistence, but had marked limitations in interacting appropriately with the public. In her opinion Blackburn had "generally moderate symptom severity and improvements with medication." Dr. Ryan noted that Blackburn's symptoms had been exacerbated since February 2010 which she attributed to situational stressors. She also concluded that Blackburn demonstrated a capacity for brief appropriate interactions during evaluations and medical appointments. According to Dr. Ryan,

the preponderance of the evidence "support[ed] the assertion that [Blackburn] is able to carry out simple instructions and perform routine, repetitive job tasks in work environments with only minimal interpersonal demands."

Blackburn's application was denied initially in May 2010 and denied on reconsideration in July 2010. In April 2011 Justmann, who was treating Blackburn, prepared a mental residual functional capacity questionnaire. The ALJ later characterized Justmann's assessment as showing "serious to marked limitations in [Blackburn's] mental functioning resulting in an inability to maintain regular work attendance or meet competitive work standards." Justmann noted that Blackburn was "anxious and angry around people" and had had homicidal thoughts in the past.

Blackburn requested a hearing before an administrative law judge (ALJ) which was held via videoconference on September 27, 2011. At the hearing, Blackburn testified that he had completed the tenth grade and had no formal vocational training. Regarding his most recent employment, Blackburn testified that he stopped going to his roofing job because he "was just getting too overwhelmed" and found it difficult to get along with his coworkers. At the time of the hearing Blackburn was living with his mother. Blackburn testified that he spent the day sleeping or watching television. His oldest son visited him several times a month. According to Blackburn, he easily became agitated and angry, and there were times when he would not leave the house because he did not like being around people. He could not go grocery shopping and could not remember the last time that he went to a store; his mother did his grocery shopping for him. Blackburn testified that he only went to his court ordered monthly appointments at Hillcrest, and sometimes went but then walked out. He testified however that he had lived on his own in an apartment provided by a housing program for about a year from April 2010 until about two months prior to the hearing. As part of this program he attended mandatory monthly appointments at Hillcrest. During this time his mother would check on him sometimes and bring him food.

Blackburn testified that he had a prior alcohol abuse problem, particularly during a difficult period following a cousin's murder, but had not consumed alcohol since "mid last year, maybe longer" and could not drink alcohol due to his current medication. Blackburn testified that he was on another medication but could not afford to renew his prescription and that his symptoms had since worsened. He testified regarding prior medications and side effects, stating that his medication generally helped his symptoms. Blackburn also described recurring homicidal thoughts. He also reported that in October 2010 he "blew up" at a family meeting about visitation and in March 2011 had an altercation with his ex girlfriend during a supervised visitation with his oldest son, during which he broke a window. Blackburn testified that he had not had any altercations in "a long time," noting that over the past few years he had "basically kept to [himself]."

Blackburn's mother, Corrine Plusall, testified at the hearing that Blackburn had visited her home often when he had his own apartment. She further testified that now that Blackburn lives with her, he will not go out even to the store. She testified that he gets very angry and "flip[s] out" three to four times per week.

Vocational expert Marian Jacobs also testified. The ALJ asked her what work would be available for such an hypothetical individual with no exertional limitations, who was "capable of tasks that can be learned in three days or less involving no more than simple work related decisions, with few workplace changes" and with "only brief and superficial interaction with the public and coworkers and only occasional interaction with supervisors." Jacobs testified that Blackburn would be unable to do his past relevant work because it required "significant interaction" with coworkers and supervisors, but that he could do other work such as final assembler of optical frames, laundry folder, or night stocker in a "big box" store. When questioned by Blackburn's attorney as to how often an individual could argue with his supervisor, Jacobs testified that if someone argued with his supervisor once a month then his ability to hold a job would be "iffy."

-5-

The ALJ denied Blackburn's application on December 9, 2011 after conducting a five step eligibility analysis. See 20 C.F.R. §§ 404.1520, 416.920. The ALJ concluded that Blackburn met the insured status requirements of the Social Security Act through September 30, 2012 and that Blackburn had not engaged in substantial gainful activity since his alleged onset date of April 1, 2009. See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ then determined that Blackburn had demonstrated the severe impairments of bipolar affective disorder, ADHD by history, personality/intermittent explosive disorder, and a substance abuse disorder in reported remission. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

The ALJ determined at the third step that none of Blackburn's severe impairments met the criteria of an impairment in the "listings." If a claimant has an impairment that meets the criteria for an impairment listed in Appendix 1 to Subpart P of Part 404 of the Code of Federal Regulations and meets the duration requirement, then the claimant is found disabled at step three. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The ALJ concluded that none of Blackburn's severe impairments met or equaled the criteria of listings 12.02 ("Organic mental disorders"), 12.04 ("Affective disorders"), or 12.08 ("Personality disorders"). See 20 C.F.R. Pt. 404, subpt. P, app. 1. At the fourth and fifth steps of the analysis, based on his determination of Blackburn's residual functional capacity (RFC) and testimony from the vocational expert, the ALJ concluded that Blackburn was unable to perform his past relevant work, but that there was other work he could perform. See 20 C.F.R. §§ 404.1520(a)(4)(iv)–(v), 416.920(a)(4)(iv)–(v).

Blackburn sought review under 42 U.S.C. § 405(g) by the district court which affirmed the ALJ's decision. Blackburn appeals, arguing that the ALJ improperly disregarded the medical opinion of his treating nurse practitioner Sarah Justmann, erred in concluding that Blackburn did not meet the criteria of listing 12.04, and posed a defective hypothetical to the vocational expert.

We review de novo the district court's affirmance of a denial of disability insurance benefits and SSI benefits. Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006). We affirm if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole. Id. Substantial evidence is less than a preponderance of the evidence, Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011), but is "such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion," Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). We may not reverse merely because we would have decided differently, or because substantial evidence supports a contrary outcome. Id.

Blackburn argues that the ALJ erred in concluding that he did not have a severe impairment that met the criteria of listing 12.04 ("Affective Disorders"). To meet a listing, a claimant must show that he or she meets all of the criteria for the listed impairment. Sullivan v. Zebley, 493 U.S. 521, 531 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan, 493 U.S. at 530; see also McCoy, 648 F.3d 605, 611–12 (8th Cir. 2011) (diagnosis or showing of some of the criteria is insufficient). Blackburn bears the burden of establishing that he meets all the criteria. McCoy, 648 F.3d at 612.

To meet listing 12.04, Blackburn must show either that (1) he suffers from a condition or symptom listed in Paragraph A which results in at least two of the four criteria listed in Paragraph B, or (2) he has a documented chronic affective disorder resulting in one of three criteria listed in Paragraph C. 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.04; see also Myers v. Colvin, 721 F.3d 521, 525–26 (8th Cir. 2013). Meeting Paragraph B of the listing requires showing that a condition has resulted in two of the following four criteria: "(1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration." Id. at § 12.04(B). Alternatively, to meet Paragraph C, Blackburn must show a medically documented "chronic affective

disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support" and one of three criteria:

> (1) Repeated episodes of decompensation, each of extended duration; or
> (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Id. at § 12.04(C).

The ALJ found that Blackburn had not met the Paragraph B criteria because he had experienced no episodes of decompensation of the required duration and showed only moderate restrictions in the areas of daily living, social functioning, and maintaining concentration, persistence, and pace. In considering the Paragraph C criteria, the ALJ noted that Blackburn had not experienced repeated episodes of decompensation and that the record showed that "minimally increased mental demands or changes in his work environment" would not cause mental decompensation. The ALJ further concluded that Blackburn was able to function outside a "highly supportive living environment."

We conclude that substantial evidence supported the ALJ's conclusion that Blackburn did not meet all the criteria for the listed impairment. See Sullivan, 493 U.S. at 531. There is no evidence that Blackburn experienced episodes of decompensation of the required length, which is three episodes within a year that last for at least two weeks. 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.00(C)(4). The assessments of Dr. Gibson and Dr. Ryan both support the ALJ's conclusion that

Blackburn would experience only moderate restrictions in daily living, social functioning, and maintaining concentration, persistence and pace. These assessments also support the ALJ's conclusion that a minimal increase in mental demands or changes in his work environment would not cause mental decompensation. Furthermore Blackburn testified that he lived alone for about a year in his own apartment, outside of a "highly supportive living environment."

Blackburn further argues that the ALJ improperly disregarded the opinion of nurse practitioner Sarah Justmann, asserting that Justmann was a "treating source" whose opinion should receive controlling weight. Although the ALJ did not directly address the issue, the district court noted that Justmann is a nurse practitioner and therefore under Social Security regulations is not an "acceptable medical source" who can be considered a "treating source." See 20 C.F.R. §§ 404.1502, 404.1513(a), 416.902, 416.913(a); see also SSR 06-03p, 71 Fed. Reg. 45,593 (Aug. 9, 2006). Nurse practitioners' opinions are considered an "other" medical source of evidence. See 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Evidence from other medical sources is evaluated based on various factors including the examining or treatment relationship, length of the relationship, frequency of examination, supportability, and consistency. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Blackburn argues that we cannot affirm on this basis because the ALJ did not make the necessary findings of facts or policy. See Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001). He further argues that Justmann was part of a treatment team like the one in Shontos v. Barnhart, 328 F.3d 418, 426–27 (8th Cir. 2003), where we recognized a nurse practitioner and a counselor as treating sources, though not acceptable medical sources, when engaged in a team approach to care that included an acceptable medical source. See Lacroix, 465 F.3d at 886 (comparing Shontos, 328 F.3d at 426–27 with Tindell v. Barnhart, 444 F.3d 1002, 1005 (8th Cir. 2006)).

We conclude that the ALJ's determination of Blackburn's residual functional capacity (RFC) was supported by substantial evidence, and that the ALJ did not err in declining to give Justmann's assessment controlling weight. We conclude it is not necessary to address Blackburn's arguments regarding Justmann's status because even a treating physician's opinion is "not inherently entitled" to controlling weight. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating source's opinion will be given controlling weight only if the ALJ finds that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Myers, 721 F.3d at 525. Furthermore where a treating source "renders inconsistent opinions that undermine the credibility of such opinions," the treating source's opinion may be discounted or disregarded. Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000).

In determining Blackburn's RFC, the ALJ discussed Blackburn's medical history in detail and specifically addressed the April 2011 questionnaire completed by Justmann. The ALJ contrasted Justmann's assessment with evidence from periods where Blackburn had been assessed higher GAF scores, exhibited a stable mood overall, and was able to spend more time with his children. Considering Justmann's more recent notes between March and May 2011, the ALJ noted confrontations with family members but also positive developments. Blackburn was living by himself in his own apartment and expressed interest in spending more time with his children. The ALJ found that Blackburn was able to complete personal care and household tasks, and that the evidence showed that he appeared to do better when living alone. The ALJ also stated that Blackburn "seem[ed] to be able to control his explosive anger" and appeared controlled when attending appointments.

The ALJ considered Blackburn's prior hospitalization and assault charges, but noted that he had received outpatient treatment since November 2008 and subsequent evidence showed "only intermittent deterioration of his social status due to anger and

-10-

irritability with fluctuations in the GAF ratings as assessed by his treating mental health source." In June 2011 a "relapse" associated with "situational stressors related to legal problems and family issues" resulted in Blackburn's commitment but three months later he had a stable mood and was "oriented, calm, cooperative, pleasant, and interacted well." The ALJ considered evidence from Justmann and others that was inconsistent with Justmann's assessment. The ALJ discussed the state agency consultative evaluation, noting that Blackburn's score on the mini mental status evaluation was "adequate," with errors consistent with ADHD and "inadequate schooling." The ALJ noted Dr. Gibson's assessment that Blackburn "showed the cognitive capacity to respond adaptively and flexibly to changes in the work place, especially in more solitary work environments." We therefore conclude that even if we were to consider Justmann as a treating source, the ALJ did not err in discounting her opinion. Even a treating source does not receive controlling weight if the source's opinions are inconsistent, see Prosch, 201 F.3d at 1013, or inconsistent with other substantial evidence in the record, see Myers, 721 F.3d at 525; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Finally Blackburn argues that the hypothetical posed by the ALJ to the vocational expert was defective because it did not include "argumentativeness." A hypothetical is sufficient if it includes the impairments supported by substantial evidence and found credible by the ALJ. Davis, 239 F.3d at 966. An ALJ is not required to include impairments from medical opinions that the ALJ has rejected "in favor of other substantial medical evidence." Prosch, 201 F.3d at 1015. We conclude that the hypothetical here was not defective. The ALJ incorporated all of Blackburn's impairments which he found credible and limited the hypothetical individual to "brief and superficial interaction with the public and coworkers and only occasional interaction with supervisors." This was based on evidence of Blackburn's impairments, including the vocational expert's testimony that he could not return to his past relevant work because it "required significant interaction with coworkers and supervisors." See Davis, 239 F.3d at 966; Prosch, 201 F.3d at 1015.

Accordingly, we affirm the denial of benefits.

_____