MELLOY, Circuit Judge,
dissenting.
I respectfully dissent. The ALJ did not provide good reasons for discounting the opinions of Michel’s treating physician, Dr. Viner. Dr. Viner was Michel’s primary care physician and saw Michel every 4 to 6 *597 weeks for the past 10 years. Dr. Viner diagnosed Michel with disabling chronic fatigue and fibromyalgia. I would remand to the district court with directions to remand to the ALJ to reconsider Michel’s application for disability insurance benefits after Dr. Viner’s opinion is afforded proper weight.
We are obligated to give “controlling weight” to the opinion of a treating physician, like Dr. Viner, “if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.” Gieseke v. Colvin, 770 F.3d 1186, 1188 (8th Cir.2014) (quoting House v. Astrue, 500 F.3d 741, 744 (8th Cir.2007)); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The majority emphasizes the exception to this rule that “a treating source does not receive controlling weight if the source’s opinions are inconsistent, or inconsistent with other substantial evidence in the record.” Blackburn v. Colvin, 761 F.3d 853, 860 (8th Cir.2014) (citations omitted). In my view, our court too often broadly interprets this exception instead of giving proper deference to the treating physician’s opinions.
In this case, the ALJ accorded “little weight” to Dr. Viner’s opinions, in part, on the grounds that his opinions were “both internally inconsistent within [Dr. Viner’s Residual Functional Capacity (RFC) Report] and externally inconsistent with [Dr. Viner’s] prior treatment records.” I find the ALJ relied on superficial and imagined inconsistencies to discount Dr. Viner’s opinions. First, according to the ALJ, Dr. Viner’s opinions are inconsistent because his RFC form indicates Michel suffered pain in her feet, but his medical records do not. That is wrong. Dr. Viner’s RFC form indicates that Michel experienced “bilateral” pain next to the category “[k]nees/ankles/feet.” Dr. Viner did not specifically indicate that Michel had pain in her feet on his RFC form. While Dr. Viner’s medical records do not refer to pain symptoms in Michel’s feet, the record provides ample support that Michel suffered pain in her knees and ankles. Thus, the ALJ erred in finding an inconsistency based on the lack of a reference to pain in Michel’s feet in the record.
Second, according to the ALJ, Dr. Viner’s opinions are inconsistent because Dr. Viner reported that Michel was “unable to work”; however, Dr. Viner “failed to fill out any functional limitations resulting from her diagnosed impairments” on Dr. Viner’s RFC form. I disagree. Although Michel admits Dr. Viner’s RFC form provides little information regarding her physical residual functional capacity, Dr. Viner’s RFC form demonstrates Michel’s physical limitations. Dr. Viner noted, for example, that during a typical eight-hour workday, Michel would “frequently” experience pain or other symptoms severe enough to interfere with her attention and concentration needed to perform even simple work tasks. Dr. Viner noted Michel has “daily and disabling” pain in her cervical spine, thoracic spine, shoulders, arms, hands/fingers, hips, legs, and knees/ankles/feet. Dr. Viner concluded that Michel is “incapable of even ‘low stress’ jobs,” and he opined she has “prolonged disability.” Dr. Viner’s medical records also include objective evidence; observations regarding Michel’s asthenic appearance; and Michel’s subjective complaints as to her fatigue, general aching, inability to walk long distances, and limited activities, all of which describe Michel’s impaired physical residual functional capacity.
Third, according to the majority, the “most glaring inconsistency” noted by the ALJ was Dr. Viner’s statement that Michel’s symptoms and limitations on the RFC form “applied to dates for the last ‘10 *598 years.’ ” The ALJ found Dr. Viner’s statement to be inconsistent with Michel’s work history because Michel worked “until October 2009.” I cannot agree. As- the ALJ recognized, Michel’s symptoms of fatigue date back to the early 1990s and were exacerbated in October of 2009. Therefore, Dr. Viner’s indication on his RFC form that Michel’s symptoms and limitations date back “10 years” is not inconsistent with the onset of Michel’s disability in October of 2009. Even if Michel continued to work until her onset date of disability of October 22, 2009, in spite of her symptoms and limitations, there may have been other driving factors that permitted or required her continued employment. See Kelley v. Callahan, 133 F.3d 583, 588 (8th Cir.1998) (indicating that one’s ability to work may be based on a lenient employer, a higher tolerance for pain, or no other means of support).
Lastly, according to the majority, the ALJ noted another inconsistency by asserting Dr. Viner’s RFC report, but not his treatment notes, says Michel suffered “‘frequent’ problems with attention and concentration.” That is not what Dr. Viner’s report says. Rather, it indicates: Michel’s experience of pain or other symptoms is severe enough to frequently interfere with attention and concentration needed to perform even simple work tasks during a typical workday. Dr. Viner’s treatment history and his RFC form focus on Michel’s physical ailments. The ALJ misconstrues Dr. Viner’s report to suggest Dr. Viner was opining as to Michel’s mental capabilities. Yet again, the ALJ imagined an inconsistency to discredit Dr. Viner’s opinions.[8] Dr. Viner’s opinions, based on a ten-year treatment history, were “well-supported by medically acceptable clinical and laboratory diagnostic techniques.” Gieseke, 770 F.3d at 1188 (quoting House, 500 F.3d at 744). Further, physical therapist' Dr. Mark Blankespoor administered an objective physical residual functional capacity test, finding that “[wjhile the client’s capabilities are in the sedentary category, she would have significant difficulty with performing work tasks on a full-time basis.” Dr. Blankespoor continued: “She would not be able to safely perform lifting, carrying, pushing, pulling, gripping, pinching, sitting, standing, walking, dexterity or positional tasks on a continuous, day after day basis.” Dr. Viner did not express an opinion regarding Michel’s physical residual functional capacity until after he reviewed Dr. Blankespoor’s objective report. Thus, Dr. Viner’s opinions deserve more credence because his opinions are supported not only by his own medical records but also by Dr. Blankespoor’s report.
In conclusion, the ALJ was hard pressed to find “good reasons” for discrediting Dr. Viner’s opinions. See Hamilton v. Astrue, 518 F.3d 607, 610 (8th Cir.2008) (“Whether the ALJ gives great or small weight to the opinions of treating physicians, the ALJ must give good reasons for giving the opinions that weight.”); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The Social Security Administration and our court have an obligation to give due deference to the opinions of treating physicians and not ignore those opinions where only superficial or imagined inconsistencies exist. See Vossen v. Astrue, 612 F.3d 1011, 1017 (8th *599 Cir.2010) (“The opinion of a treating physician, is accorded special deference under the social security regulations.” (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir.2000))). For the reasons discussed above, I would reverse and remand to the district court with instructions to remand to the ALJ for reconsideration of the weight given to Dr. Viner’s opinions.

. It should also be noted the mental health records that the ALJ indicates are inconsistent with Dr. Viner’s opinions are not as inconsistent as suggested. While the notes generally indicate: “Concentration: Good, Able to comment on events,’’ they then usually go on to indicate: "Concentration: Unchanged, : good at times, memory still not what it should be ...” However, other notes also indicate that on some visits concentration is ”[i]m-proved” while other occasions it is ”[w]orse.”