# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1232

_____

Curtis Igo

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: September 22, 2016
Filed: October 13, 2016

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Curtis Igo appeals the decision of the district court[1] affirming the administrative law judge's ("ALJ") denial of his application for disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423. Because the

_____

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

decision of the ALJ is supported by substantial evidence on the record as a whole, we affirm.

## I. Background

Igo claims that he is disabled as a result of osteoarthritis and degenerative joint disease of the hips, degenerative disc disease of the lumbar and cervical spines, sensory and motor neuropathies, chronic shoulder pain and osteoarthritis, and carpal tunnel syndrome. Igo has an associate's degree in digital electronics and worked steadily throughout his life until 2010. In December 2010, he began working part-time as a receptionist at a senior center. On April 18, 2013, Igo filed his claim for disability insurance benefits, alleging disability since September 1, 2009. Igo's claim was denied initially, upon reconsideration, and after a hearing before the ALJ.

The ALJ evaluated Igo's disability claim according to the five-step sequential evaluation process prescribed by the Social Security regulations. *See Goff v. Barnhart*, 421 F.3d 785, 789-90 (8th Cir. 2005); 20 C.F.R. § 404.1520(a)-(f). At the first step of the analysis, the ALJ examines the claimant's work activity. If the claimant is performing "substantial gainful activity," then he is not disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520(b). Based on Igo's monthly earnings, the ALJ concluded that Igo had not performed substantial gainful activity since his alleged onset date of September 1, 2009. At the second step, the ALJ determines whether the claimant has a severe impairment that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The ALJ found that Igo had multiple severe impairments: degenerative disc disease of the lumbar and cervical spines, osteoarthritis and degenerative joint disease of the hips, carpal tunnel syndrome, and sensory neuropathy. The ALJ found that Igo's mental impairments were nonsevere.

At the third step, the ALJ determines based on the medical evidence whether the severe impairments meet or equal the criteria of a "listed impairment," which is presumed to be disabling. 20 C.F.R. § 404.1520(d). The ALJ concluded that Igo did not have an impairment or combination of impairments that met or equaled the criteria of a listed impairment. The ALJ did not specify which of the listed impairments he considered.

At the fourth step, the ALJ assesses the claimant's residual functional capacity ("RFC") and considers whether the claimant can do his past relevant work based on his RFC. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545 (defining RFC as "the most [a claimant] can still do despite" his "physical or mental limitations"). After a lengthy recitation of the testimony and medical evidence that he considered, the ALJ concluded that Igo retained the RFC to perform sedentary work. *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."). Based on the RFC, the ALJ found that Igo was able to perform his past relevant work as a receptionist and, therefore, was not disabled under the Social Security Act. Thus, the ALJ did not reach the fifth step of the analysis.

The Social Security Appeals Council denied Igo's request for review, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Igo then sought review in the district court under 42 U.S.C. § 405(g). The district court affirmed the decision of the Commissioner. Igo now appeals, arguing that (1) the ALJ should have found that Igo meets or equals the criteria of Listing 1.02A, which is the listed impairment governing major dysfunction of a joint, and (2) the ALJ erred in assessing Igo's RFC.

## II.    Discussion

We review *de novo* the district court's decision affirming the ALJ's denial of benefits.  *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014).  In reviewing the ALJ's decision, we examine whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors.  *Id.*  "Substantial evidence is less than a preponderance of the evidence" and is "'such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion.'"  *Id.*  (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)).  We may not reverse simply because we would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion.  *Id.*

Igo first argues that the ALJ erred in failing to find that Igo's impairments met or equaled the criteria of Listing 1.02A and in failing to mention this listing in his decision.[2]  However, even assuming that the ALJ erred by failing to mention Listing 1.02A, it is not necessarily reversible error.  *See Brown v. Colvin*, No. 15-3001, 2016 WL 3361472, at *3 (8th Cir. June 17, 2016) ("The ALJ's failure to identify and analyze the appropriate listing, although error, may not by itself require reversal so long as the record otherwise supports the ALJ's overall conclusion.").  Thus, we will uphold the ALJ's decision so long as "substantial evidence in the record supported the ALJ's determination" that Igo's impairments did not meet or equal the criteria of any listed impairment, including Listing 1.02A.  *See Boettcher v. Astrue*, 652 F.3d 860, 864 (8th Cir. 2011).

---

[2]Igo also contends that the ALJ erred by failing to consider a disability onset date later than the one Igo alleged in his application for benefits.  Igo did not raise this argument before the district court, and we decline to consider it for the first time here. *See  Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997) ("Ordinarily, issues raised for the first time on appeal will not be considered unless the claimant can show that manifest injustice would otherwise result.") (citations omitted).

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (internal quotations and citations omitted). Listing 1.02 concerns the major dysfunction of a joint, which is characterized by: gross anatomical deformity; chronic joint pain and stiffness; and either joint space narrowing, bony destruction, or ankylosis shown by medically acceptable imaging. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02. Listing 1.02A further requires the claimant to show that the impairment at issue involves at least "one major peripheral weight-bearing joint (i.e., hip, knee, or ankle)" and results in an "inability to ambulate effectively." *Id.* at § 1.02A. In this case, substantial evidence supports the conclusion that Igo did not suffer from either a "gross anatomical deformity" or an "inability to ambulate effectively."

Because the regulations do not define "gross anatomical deformity," we must give the term its "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). The common medical definition of "gross" refers to "coarse or large" and "visible to the naked eye without the use of magnification." *Dorland's Illustrated Medical Dictionary* 819 (31st ed. 2007). Listing 1.02A also provides examples of a gross anatomical deformity: subluxation, contracture, bony or fibrous ankyloses, and instability. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02A. Igo concedes that he did not have subluxation, contracture, or bony or fibrous ankyloses, but he contends that he satisfies the listing because he has instability. However, any joint instability he may have had does not qualify as "gross." The ALJ considered evidence regarding the nature of the deformity and noted that X-rays revealed severe bilateral hip degenerative changes and joint space narrowing. Because Igo's impairments were discovered through radiographic studies and were not obvious to the naked eye, there is at least substantial evidence supporting the conclusion that Igo did not suffer from a gross anatomical deformity.

An "inability to ambulate effectively" means that the impairment "interferes very seriously with [his] ability to independently initiate, sustain, or complete

activities." *Id.* at § 1.00(B)(2)(b). As the ALJ noted, Igo's own testimony revealed that "on a typical day, he showered, took the bus to training, did clerical work, rode the bus home, and made dinner." As late as May 2014, Igo "was able to ambulate and climb stairs with modified independence using a cane, and he was independent with most activities of daily living." Therefore, substantial evidence supports the conclusion that Igo did not suffer from an inability to ambulate effectively.

Substantial evidence also supports the conclusion that Igo did not have a combination of impairments that medically equaled Listing 1.02A. A claimant can establish equivalency if the claimant has "a combination of impairments, no one of which meets a listing," and the findings related to that combination "are at least of equal medical significance to those of a listed impairment." 20 C.F.R. § 404.1526(b)(3). "To establish equivalency, a claimant 'must present medical findings equal in severity to all the criteria for the one most similarly listed impairment.'" *Carlson v. Astrue*, 604 F.3d 589, 594 (8th Cir. 2010) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). Igo points to no evidence, other than the x-ray results of his hips, that shows a combination of impairments equal in severity to the criterion of gross anatomical deformity. Igo argues that his multitude of spinal maladies caused limitations in his range of motion which, when combined with his hip impairment, rendered him unable to ambulate effectively. However, this claim is undermined by the evidence regarding Igo's daily activities.

Igo also contends that the ALJ erred in failing to consider whether Igo's pain helped him equal Listing 1.02A. However, the ALJ expressly discussed Igo's pain complaints during his discussion of Igo's RFC. Nevertheless, the ALJ found that the medical evidence did not support a finding that Igo suffered a disabling condition. Therefore, the ALJ did not err in concluding that Igo did not meet or equal any listed impairment.

Second, Igo argues that the ALJ erred in assessing Igo's RFC. The ALJ's RFC assessment must be based on "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a). Even "non-severe" impairments must be considered in the RFC. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). In evaluating the ALJ's RFC assessment, "we consider all of the evidence that was before the ALJ, but we do not re-weigh the evidence, and we defer to the ALJ's determinations regarding the credibility of witnesses so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).

Igo contends that the ALJ failed to consider four pain-related limitations: a need to alternate positions, an inability to concentrate, restrictions in keyboarding, and restrictions in reaching.[3] However, the ALJ expressly considered all four of these limitations and provided good reasons for discounting them. The ALJ acknowledged Igo's claim that "he had to change positions" every five minutes, but the ALJ found this "very unlikely" because "the medical notes do not seem to ever mention that" and it "is contradicted by his apparent success in part time work." The ALJ acknowledged Igo's claim that his neck pain limits "raising his arms," but the ALJ observed that "his cervical alignment is maintained" and "[h]e has full strength in all extremities," which is "not consistent with his alleged arm restrictions." The ALJ recognized Igo's supervisor's claim that he suffered "problems with concentration," but the ALJ discounted this claim because "lay opinions based upon casual observation" are "given little weight." Although the ALJ did not address keyboard limitations, that is likely because the ALJ recognized that Igo's own treating physician admitted that he "could do keyboarding." Because the ALJ expressly considered all of the limitations that Igo cites, we conclude that the ALJ did not err.

---

[3]Igo also claims that the ALJ erred in failing to consider evidence of Igo's non-severe mental impairments. However, Igo did not make this argument before the district court; Igo argued only that the ALJ erred in not classifying his mental impairments as severe. We decline to consider this argument for the first time on appeal. *See Flynn*, 107 F.3d at 620.

Igo further contends that the ALJ erred in failing to properly evaluate the opinions of Igo's work supervisor, Kristin Kromray. As Igo's employer, Kromray is considered a "non-medical source[]," C.F.R. § 404.1513(d)(4), who has not "seen the claimant in his or her professional capacity," SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). Regarding evidence from such sources, the ALJ should "consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Id.* The ALJ is not required to explain the weight given to opinions from "other sources" unless they include "acceptable medical sources" or "'non-medical sources' who have seen the claimant in their professional capacity." *Id.* Here, the ALJ concluded that Kromray's opinion "lack[ed] substantial support from objective findings in the record" for the same reasons that Igo's own allegations lacked substantial support. Thus, the same evidence that the ALJ cited in finding Igo's complaints not fully supported likewise serves to discount Kromray's opinion. Because the ALJ is not required to give substantial weight to Kromray's opinion or to give a more detailed explanation for discounting it, the ALJ did not err in his evaluation of her opinion.

Igo also contends that the ALJ improperly discounted the opinion of Igo's treating physician, Dr. Luke Gabe, M.D., that Igo was disabled.[4] "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight." *Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000). However, "an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Goff*, 421 F.3d at 790). Here, the ALJ concluded that Dr. Gabe's opinion "contrasts sharply with the other

_____

[4] Igo also contends that the ALJ erred in according "very little weight" to Igo's orthopedic nurse practitioner, Catherine Stanforth. Igo did not raise this argument before the district court, and we decline to consider it on appeal. *See Flynn*, 107 F.3d at 620.

evidence of record, and is without substantial support from the other evidence of record." The ALJ noted that Igo's medical reports revealed, among other things, that he had normal 5/5 motor strength in all extremities, his acuity seemed normal, his reflexes and fine fingering were normal, and he reported feeling fine. Therefore, good reasons and substantial evidence on the record as a whole support the ALJ's decision to discount Dr. Gabe's opinion.

Lastly, Igo contends that the ALJ improperly analyzed Igo's credibility. However, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Id.* As the ALJ noted, Igo's alleged limitations are inconsistent with his daily activities. The ALJ adequately explained this finding by pointing to Igo's testimony and other medical evidence. Therefore, substantial evidence in the record as a whole supports the ALJ's finding that Igo had the residual functional capacity to perform his past relevant work as a receptionist and thus was not disabled under the Social Security Act.

## III. Conclusion

Because the denial of disability insurance benefits is supported by substantial evidence on the record as a whole, the judgment of the district court is affirmed.

_____